# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANZ BOENING | * | |
| Deer Mountain Estate | * | |
| Harpers Ferry, WV 25425 | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No: 07-_____ |
| v. | * | |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| Washington, D.C. 20505 | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff, and federal whistleblower, Franz Boening brings this action against defendant Central Intelligence Agency ("CIA") for injunctive and declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the All Writs Act, 28 U.S.C. § 1651, the CIA's internal regulations and the First Amendment to the Constitution of the United States.

The CIA has unlawfully imposed a prior restraint upon Franz Boening by obstructing and infringing on his right to disseminate unclassified information concerning his efforts to expose the CIA's illegal relationship with a foreign national, for which the Agency retaliated against him. Additionally, the CIA deliberately interfered with Boening's efforts to properly challenge the CIA's classification actions before the Interagency Security Appeals Panel, an intra-governmental entity coordinated by the Information Security Oversight Office of the National Archives & Records Administration.

## JURISDICTION

1.  This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1331 and the U.S. Constitution.

## VENUE

2.  Venue is appropriate in the District under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3.  Plaintiff Franz Boening ("Boening") was formerly employed by the Central Intelligence Agency from 1980 – 2005. After learning Arabic in the early 1980s, he spent nearly one dozen years in agent operations, primarily in the Middle East. He worked declassification issues from 1995 – 1999, and ultimately retired from the Agency after working at the Foreign Broadcast Information Service where he handled Internet exploitation and training. He has held a Top Secret/Sensitive Compartmented security clearance for nearly 25 years. He is required by virtue of a secrecy agreement to submit most personal writings for prepublication review. As a result of the matters addressed herein Boening became a whistleblower and suffered employment retaliation to include not being sent to Foreign Country "A" despite his having volunteered and possessing needed language skills.

4.  Defendant Central Intelligence Agency ("CIA") is an agency as defined by 5 U.S.C. § 701. Its actions have prevented Boening from disseminating certain written materials and from challenging unlawful agency conduct.

## FACTS

5.  By memorandum dated November 22, 2004, Boening submitted to the CIA's Publication Review Board ("PRB") four documents for classification review for the

purposes of potential public dissemination. These were: (a) May 10, 2001, Whistleblower

Complaint and addendums dealing with [Individual's name]; (b) March 24, 2003,

Whistleblower Complaint alleging retaliation; (c) May 20, 2004, Whistleblower

Complaint alleging retaliation; and (d) January 16, 2003, Grievance Against FBIS

managers. It was noted that (a) through (c) were considered classified by the CIA, and

that the CIA was not permitting review of (b) or (c). Documents (b) and (c) were later

declassified and are not at issue in this litigation.

6.  Boening's May 10, 2001, memorandum sought to detail perceived violations of

the law committed by the CIA. It was drafted for the consumption of the Director, CIA,

and numerous senior CIA officials. It specifically alleged that the:

> CIA may have violated US laws during its 10+ year relationship with
> [NAME REDACTED](paragraph five);
>
> CIA's professional behavior was so scandalous that it seriously damaged
> American prestige and credibility (paragraph six);
>
> relationship continued because of an egregious counterintelligence
> failure (paragraph eight).

7.  It is Boening's contention that the CIA maintained a special relationship with a

foreign individual who committed unlawful human rights violations and criminal acts

with the knowledge of the CIA, and that despite other federal agencies expressing interest

in seeing this person arrested the CIA preferred that such action not take place. Boening

was not permitted to reveal this individual's name, despite the fact that all of his

references were taken from public, unclassified, sources. As he noted in his still partially

classified memorandum of May 10, 2001:

> In an effort to combat drug traffickers, CIA deluded itself into believing
> – despite a mountain of freely available, contrary evidence – that
> [NAME REDACTED] was sincerely helping to further USG policy

3

goals. What it didn't take into account is that men like [NAME
REDACTED] if fundamentally misunderstood, can subvert whole
aspects of US foreign policy. The counterintelligence failure was
exacerbated and prolonged by CIA's hubris and apparent tendency
towards secrecy, even with USG colleagues. **CIA's hubris,
secretiveness, disinclination to accept contrary assessments and
evidence, its lax management, and its desire to avoid
embarrassment, all proved to be a smoldering recipe for disaster.**
(emphasis original)

8.   Although the entire analysis and factual recitation of the CIA's involvement with

this individual that was drafted by Boening was based purely on publicly available

nongovernmental (including newspaper articles) and unclassified government websites,

including from FBIS, the CIA "classified" more than a dozen pages of publicly available

newspaper, radio, and television information, a practice that was commonly assumed to

have been discontinued by the CIA years ago. Additional, the CIA not only deleted all

references to the foreign individual's name but also Boening's personal assessment of

this individual. Yet, Boening had never once read any classified CIA document

pertaining to this individual.

9.   Despite significant internal efforts by Boening he was unable to persuade the CIA

to declassify the information of concern. Indeed, William McNair, then CIA's

Information Review Officer, Directorate of Operations, told Boening in May 2002:

"Look, Franz, do you think I care about [Foreign Individual's name]?  This is not

about 'source protection,' this is about CIA's reputation.  We don't want you to have any

credibility."

10. After submitting the documents to the PRB for review, Boening and the then PRB

Chairman, Paul Noel Chretien, exchanged internal messages throughout Summer 2005.

These led to the issuance of a letter dated in or around January 2006, from the PRB that

4

confirmed that the individual's name and country could be released if Boening could demonstrate the information was based on overt sources.

11. However, by letter dated June 20, 2006, the new PRB Chairman, Richard Puhl, formally notified Boening of a reversal of the CIA's decision regarding the classification of his submissions. This letter detailed thirteen pages of required changes on the basis that the information "is inappropriate for disclosure in the public domain and must be revised or deleted prior to publication". The clear implication was that the information that must be redacted was classified. The relevant information included the individual's name and country of origin that was the subject of Boening's memorandum. The PRB also noted it required Boening to include a specific disclaimer should he disseminate the documents.

12. By e-mail dated June 30, 2006, in response to Boening's inquiries, the PRB's Richard Florence clarified that:

> If you rewrite your [Foreign Individual's name] story in a different format, outside the official-looking memo-type one it currently is in; and attribute those statements to open sources in the new format (as you basically have), there should be no problem with you getting your message out. The deletions noted in our letter pertain to the information as presented in the old format and not to the information itself.

13. Two of Boening's whistleblower memos that have been publicly released by the CIA were drafted in the same format that the CIA was now challenging.

14. Finally, the PRB sent a letter dated August 11, 2006, to Boening informing him that the "2001 classified annex" document he created was considered "inappropriate for disclosure inn the public domain (i.e., is considered to be classified information)." This was despite the fact that the CIA acknowledged in other email messages that Boening's sources (totaling more than 80) were all overt.

15. As part of his representation of Boening's interests before the CIA's Office of Inspector General on matters relating to the contents of the documents in question, the undersigned attorney has been provided with authorized access to most, if not all, of the relevant documents and information at issue in this litigation. This included, but was not limited to, the "classified" 24 March 2003 document and a related draft Report of Investigation prepared by the OIG.

16. In addition to pursuing these matters internally, Boening also brought his classification challenge to the attention of the Information Security Oversight Office ("ISOO"), National Archives & Records Administration, pursuant to Section 1.9 of Executive Order 12,958 (1995), as amended to become Section 1.8 of Executive 13,292 (2003). This provision states that:

> (a) Authorized holders of information who, in good faith, believe that its classification status is improper are encouraged and expected to challenge the classification status of the information in accordance with agency procedures established under paragraph (b) of this section.
> (b) In accordance with implementing directives issued pursuant to this order, an agency head or senior agency official shall establish procedures under which authorized holders of information are encouraged and expected to challenge the classification of information that they believe is improperly classified or unclassified. These procedures shall ensure that:
> > (1) individuals are not subject to retribution for bringing such actions;
> > (2) an opportunity is provided for review by an impartial official or panel; and
> > (3) individuals are advised of their right to appeal agency decisions to the Interagency Security Classification Appeals Panel (Panel) established by section 5.3 of this order.

17. Upon information and belief, Boening is the only federal employee to have ever sought to challenge a classification decision under this provision since it was created in 1995.

18. This effort was ultimately unsuccessful as the CIA claimed that Boening was not an "authorized holder of information" with respect to his exercising a challenge under this provision for information pertaining to the individual foreign national. Upon information and belief, the CIA, in order to legally extricate itself from this unique classification challenge, was admitting that Boening did not possess authorized access to classified information concerning the subject matter of his documents and, therefore, the information contained therein was not classified.

19  Additionally, the CIA asserted that Boening's documents were personal, and not official, in nature. Thus, the CIA can neither challenge the format structure nor the contents therein.

<u>**FIRST CAUSE OF ACTION**</u>
<u>**(FIRST AMENDMENT - RIGHT TO PUBLISH -**</u>
<u>**CLASSIFICATION CHALLENGE)**</u>

20. Boening repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

21. Boening properly submitted, pursuant to one or more secrecy agreements, several documents for prepublication review.

22. The information within the documents submitted by Boening was compiled solely from unclassified public sources.

23. The CIA has identified alleged classification concerns in the documents and denied Boening the right to publish certain information even though it was supported by open source material.

24. At the same time the CIA has also claimed that the documents do not contain classified information but that a change in format would alleviate any problems.

25. The CIA has failed to show that Boening's First Amendment right to publish is outweighed by the government's interest in efficiently carrying out its mission by minimizing harms that are real, not merely conjecture.

26. The CIA has failed to demonstrate the existence of substantial government interests that would enable it to prohibit the publication of certain information within Boening's personal documents. Moreover, they have imposed unreasonable restrictions on Boening's activities that are protected by the First Amendment.

27. The CIA's restrictions imposed upon Boening have been unduly vague and were not narrowly confined to avoid infringement of his First Amendment rights. They have unnecessarily restricted speech that does not serve to protect any substantial government interest.

28. Most importantly, the CIA has failed to produce explanations with reasonable specificity that demonstrates a logical connection between the information to be deleted and the reasons for classification. The reasons for classification are neither rational nor plausible. Thus, they cannot support the CIA's attempt to censor Boening's documents.

29. Because the CIA has impermissibly infringed upon Boening's right to publish the information contained within his documents, it has violated Boening's First Amendment rights. Thus, Boening has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

## SECOND CAUSE OF ACTION
## (ADMINISTRATIVE PROCEDURE ACT – CHALLENGE TO FINAL AGENCY ACTION; CONSTITUTIONAL VIOLATION)

30. Boening repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

31. Boening properly submitted, pursuant to one or more secrecy agreements and all applicable regulations, on different occasions his documents for prepublication review.

32. The CIA is required to respond to prepublication reviewed within 30 days. However, it routinely fails to meet the required deadline and often, as in this case, neglects to seek or notify the submitter of any need for an extension of time.

33. Although the CIA claims it can take more than 30 days to review a document submitted for prepublication review, upon information and belief, the CIA does nothing to ensure submitters are aware of the CIA's perceived policy that it can unilaterally grant itself an extension of time. Nor does the CIA seek to inform submitters that its failure to meet the 30 day deadline does not automatically designate the information as publishable, although it is well aware that submitters believe otherwise. In fact, the CIA has done the opposite by disseminating materials that clearly state there is a 30 day deadline.

34. The CIA routinely fails to abide by the 30 day deadline, but will eventually respond just prior to the initiation or in the early stages of litigation. Thus, this is a controversy that is capable of repeating itself yet evading review thereby permitting oversight by the courts.

35. The CIA lacks lawful authority to reverse its previously issued decisions made pursuant to the prepublication review process. All previously approved information remains unclassified and available for dissemination or publication by Boening

Additionally, the CIA lacks lawful authority to require Boening to include any disclaimer if he chooses not to do so.

36. The CIA's decision to deny Boening's the ability to publish certain text within his documents constitutes final agency action.

37. The CIA, its officers and employees, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Boening, including, but not limited to, unreasonably delaying prepublication review decisions, requiring him to modify the format (rather than substance) of his documents and attempting to require Boening to publish a disclaimer. These acts are unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations, federal statutes, other applicable provisions of law, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, thereby causing Boening to suffer legal wrongs under the Administrative Procedure Act.

38. Because the CIA has impermissibly infringed upon Boening's right to publish the previously approved information contained within his manuscript, they have violated Boening's First Amendment rights. Thus, Boening has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

## THIRD CAUSE OF ACTION
## (ADMINISTRATIVE PROCEDURE ACT – CHALLENGE TO FINAL AGENCY ACTION; DECLARATORY JUDGMENT)

39. Boening repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

40. Boening properly challenged the CIA's classification decisions pursuant to Executive Order 12,958/13,292 and its internal regulations as set forth Title 32 of the Code of Federal Regulations.

41. The CIA arbitrarily, capriciously and erroneously determined that Boening was not a proper "authorized holder" of classified information so as to allow standing to challenge the CIA's classification decisions regarding the documents/information at issue herein before the ISOO/ISCAP.

42. Boening was, however, an "authorized holder" of classified information pursuant to the relevant regulation and no nexis was required between filing a complaint and having access to the specific information/documents.

43. Boening, in order to protect his constitutional and regulatory rights, desires to have his undersigned counsel review certain documents asserted to be classified by the CIA, but this has not been permitted.

44. Boening exhausted all required administrative remedies in pursuing his challenge.

WHEREFORE, plaintiff Franz Boening, requests that the Court award him the following relief:

(1) Order the CIA to formally authorize the release of the withheld portions of his documents;

(2) Enjoin the CIA from initiating civil or criminal proceedings against him for past or future publication of any text within his manuscript;

(3) Declare that his documents do not contain classified information and that he possesses a First Amendment right to publish the contents in their entirety;

(4) Declare that the CIA cannot require non-substantive format changes of documents nor can it impose a mandatory obligation to publish its disclaimer;

(5) Declare that he possesses a First Amendment right to communicate with his counsel to include discussions involving classified information;

(6) Declare that he possesses the ability to reach need-to-know decisions regarding the disclosure of relevant classified information to his cleared counsel;

(7) Declare that the CIA violated the Administrative Procedure Act and its internal regulations governing the granting of access to counsel to classified information;

(8) Declare that his undersigned counsel possesses a need-to-know relevant classified information concerning the redacted portions of the manuscript;

(9) Declare that the CIA violated the Administrative Procedure Act and its internal regulations governing prepublication review;

(10) Declare that Boening was, in fact, an authorized holder of classified information and properly brought his complaint to the attention of the Information Security Oversight Office and Interagency Security Appeals Panel;

(11) Require the CIA to abide by the 30 day deadline for prepublication review;

(12) Award him the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law;

(13) grant such other relief as the Court may deem just and proper.

Date:   March 5, 2007

Respectfully submitted,

_____
Mark S. Zaid, Esq.
DC Bar #440532
Mark S. Zaid, P.C.
1920 N St., N.W.
Suite 300
Washington, D.C. 20006
(202) 454-2809
ZaidMS@aol.com

Attorney for Plaintiff

07-430
C EGS

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Franz Boening

**DEFENDANTS**

Central Intelligence Agency

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Jefferson
(EXCEPT IN U.S. PLAINTIFF CASES)   88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark S. Zaid, Esq.
1920 N Street, N.W., Suite 300
Washington, D.C. 20036
(202) 452-4835

CASE NUMBER  1:07CV00430

JUDGE: Emmet G. Sullivan

DECK TYPE: Administrative Agency Review

DATE STAMP: 03/05/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP... FOR PLA...  ..., FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ Motor Vehicle Product Liability
...lity

◉ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

CHECK
Check/Money Order Num:
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

07-0430

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check.

...OR

...eal 28 USC 158
...hdrawal 28 USC 157

...titions
...ath Penalty
...ndamus & Other
...il Rights
...son Condition

...ghts
...pyrights
...ent
...ademark

...Suits
...es (US plaintiff or ...endant
...s-Third Party 26 USC 7609

○ **F. Pro Se General Civil**

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  **G. Habeas Corpus/ 2255** | O  **H. Employment Discrimination** | O  **I. FOIA/PRIVACY ACT** | O  **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  **K. Labor/ERISA (non-employment)** | O  **L. Other Civil Rights (non-employment)** | O  **M. Contract** | O  **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Prepublication Review Challenge pursuant to First Amendment and Administrative Procedures Act, 5 USC 702 et seq

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE *3/5/07*   SIGNATURE OF ATTORNEY OF RECORD *Mark S. Zaid*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.