**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

FRANZ BOENING,                          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )        Civil Action No. 07-0430 (EGS)
                                        )
CENTRAL INTELLIGENCE AGENCY,            )
                                        )
            Defendant.                  )
                                        )

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND**
**RENEWED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:                             MICHAEL P. ABATE
Kyle Schurle                            Attorney, Civil Division
Office of the General Counsel           U.S. Department of Justice
Central Intelligence Agency             20 Massachusetts Ave., N.W., Room 7302
Washington, DC  20505                   Washington, D.C. 20530

                                        *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    *Stillman v. CIA* Requires this Court to Deny Plaintiff's
Motion for Access. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    This Court Should Grant Defendant's Motion for
Summary Judgment on Plaintiff's First Amendment Claim. . . . . . . . . . . . . . . . 6

    A.    Plaintiff Failed to Meet His Burden of Identifying the
Purported Overt Sources for the Assertions the CIA
Deemed Classified. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Plaintiff's Memorandum Lacks Citations Sufficient
to Identify Overt Sources for the Assertions the CIA
Deemed Classified. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Plaintiff's Decision to Provide PRB with a Large
Volume of Material, in Lieu of Specific Citations to
Publications, Was Insufficient to Discharge His Burden
to Identify His Overt Sources. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    Plaintiff's Other Arguments Opposing Summary Judgment
on His First Amendment Claim Lack Merit. . . . . . . . . . . . . . . . . . . . . 14

        1.    The CIA Properly Required Plaintiff to Remove the
Memorandum From Its Official-Looking Format and
Include the Disclaimer Mandated by the PRB Rules. . . . . . . . . . 14

        2.    The CIA Has Not Classified Plaintiff's Memorandum
Because It Alleges Violations of Law. . . . . . . . . . . . . . . . . . . . . 17

        3.    Discovery Is Not Required on Plaintiff's First
Amendment Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.   This Court Should Grant Defendant's Motion to
Dismiss Plaintiff's APA Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     A.   Plaintiff's Claim Regarding the Processing of His PRB
Submission Within 30 Days is Moot. . . . . . . . . . . . . . . . . . . . . . . . . . 21

     B.   This Court Lacks Jurisdiction Over Plaintiff's APA Claim
Regarding His Attempt to Bring an "Official" Classification
Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          1.   There Is No Meaningful Relief this Court Could
Award With Regard to Plaintiff's Classification
Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          2.   The CIA Correctly Denied Plaintiff Permission to
Bring an Official Classification Challenge. . . . . . . . . . . . . . . 25

     C.   Plaintiff's New APA Claims Are Not Properly Before This
Court and Lack Merit in Any Event. . . . . . . . . . . . . . . . . . . . . . . . . . . 28

          1.   Plaintiff's New APA Claims Are Not Properly Before
This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

          2.   The CIA's Determination that Plaintiff Should Submit
His Memorandum to the PRB, Rather Than to the ARP,
Is Entitled to Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**CASES**                                                                            **PAGES**

<u>Afshar v. Dep't of State</u>, 702 F.2d 1125 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . .  9, 15, 19

<u>Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service</u>,
     297 F. Supp. 2d 165 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

<u>Auer v. Robbins</u>, 519 U.S. 452 (1997).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

<u>Byrd v. EPA</u>, 174 F.3d 239 (D.D.C. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

<u>Calvetti v. Antcliff</u>, 346 F. Supp. 92 (D.D.C.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

<u>Canning v. U.S. Dep't of Justice</u>, 848 F. Supp. 1037 (D.D.C.1994). . . . . . . . . . . . . . . . . .  18

<u>Center For Biological Diversity v. Gutierrez</u>, 451 F. Supp. 2d 57 (D.D.C. 2006).  . . . . . . . . .  24

<u>Coleman v. Pension Benefit Guar. Corp.</u>, 94 F. Supp. 2d 18 (D.D.C.  2000). . . . . . . . . . . . . .  29

<u>Cruz v. American Airlines</u>, 150 F. Supp. 2d 103 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . .  24

<u>Doe I v. State of Israel</u>, 400 F. Supp. 2d 86 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . .  29

<u>Gardels v. CIA</u>, 689 F.2d 1100 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

<u>Lamont v. Dep't of Justice</u>, 475 F. Supp. 761 (S.D.N.Y. 1979).  . . . . . . . . . . . . . . . . . . . . . .  12

<u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472 (1990).  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

<u>McGehee v. Casey</u>, 718 F.2d 1137 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 12, 19

<u>Military Audit Project v. Casey</u>, 656 F.2d 724 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . .  10

<u>NLRB v. Bell Aerospace Co.</u>, 416 U.S. 267 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

<u>NLRB v. Wyman-Gordon Co.</u>, 394 U.S. 759 (1969).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

<u>Paralyzed Veterans of Am. v. D.C. Arena L.P.</u>, 117 F.3d 579
    (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

<u>People for the American Way Foundation v. National Security Agency/</u>
    <u>Central Security Service</u>, 462 F. Supp. 2d 21 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . 18

<u>Phillippi v. CIA</u>, 655 F.2d 1325 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

<u>Russello v. United States</u>, 464 U.S. 16 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

<u>SEC v. Chenery Corp.</u>, 332 U.S. 194 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

<u>Shalala v. Guernsey Memorial Hosp.</u>, 514 U.S. 87 (1995). . . . . . . . . . . . . . . . . . . . . . . . . .  34

<u>Snepp v. United States</u>, 444 U.S. 507 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>Stillman v. CIA</u>, 319 F.3d 546 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

<u>Stillman v. CIA</u>, , F. Supp. 2d __, 2007 WL 1020814 (D.D.C. 2007). . . . . . . . . . . . . . . . . . .  21

<u>Weaver v. U.S. Information Agency</u>, 87 F.3d 1429 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . .  16

<u>Weissman v. CIA</u>, 565 F.2d 692 (D.C. Cir. 1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## <u>STATUTES AND REGULATIONS</u>

Executive Order 12958, as amended. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 551(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

50 U.S.C. §§ 403q(d)(5)(D)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

32 C.F.R. §1907.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 31, 32

32 C.F.R. § 1907.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

## INTRODUCTION

Plaintiff's motion to compel access to the government's classified filings, including the classified May 10, 2001 Memorandum ("Memorandum") and the *in camera*, *ex parte* declaration of Ralph S. DiMaio ("Classified DiMaio Decl."), represents an attempt to re-litigate an issue unsuccessfully pressed upon the D.C. Circuit in *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003). In that case, as here, plaintiff's counsel filed a motion asserting that his client's First Amendment right to publish unclassified information required this Court to order the government to provide access to certain classified documents to assist the Court in considering the government's motion for summary judgment. The D.C. Circuit disagreed. It held that prepublication review cases can and should begin with an *ex parte* and *in camera* consideration of submissions from the government's classification experts. *Id. Stillman* held that principles of constitutional avoidance require a district court to first consider whether it can make a determination about the proper classification of the material based upon the government's *in camera*, *ex parte* filing, and that it constitutes reversible error for a court to prematurely address, instead, the constitutional question posed by plaintiff's motion. The D.C. Circuit stated that a district court must first "determine whether it can, consistent with the protection of [plaintiff]'s first amendment rights to speak and to publish, and with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel." *Id.* at 549.

As demonstrated below, nothing in plaintiff's motion to compel requires this Court to deviate from the sequence of events prescribed by *Stillman*. Therefore, and in conjunction with

this opposition to plaintiff's motion to compel, defendant respectfully renews its Motion to Dismiss and Motion for Summary Judgment ("Mot. Dismiss") (Dkt. no. 4) and requests this Court to consider whether the *ex parte*, *in camera* submissions in support of that motion, viewed "with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue." *Stillman*, 319 F.3d at 549.

The Court can readily resolve the classification issue without providing plaintiff or his counsel access to classified materials. As spelled out in greater detail below, the parties' briefing on the cross-motions for summary judgment reveal that at this time the classification dispute turns on a narrow question of law: has plaintiff, who asserts that all of the information in his memorandum was drawn from public source materials, met his initial burden of identifying to the Publication Review Board ("PRB") the specific public source information for each assertion the CIA deemed classified? Plaintiff has failed to perform even this threshold task; he refused to provide the PRB with the requested pinpoint citations and, instead, turned over a large volume of materials so that the Board could perform the task of combing through those documents. Therefore, plaintiff's claim that the information in his memorandum is derived solely from public sources should fail as a matter of law. This Court should grant the defendant's Motion to Dismiss and Motion for Summary Judgment.[1]

_____

[1] The PRB remains willing to work with plaintiff to create an unclassified version of his memorandum. If the plaintiff wishes to pursue publication of his memorandum, he should resubmit the memorandum to the PRB with the requested pinpoint citations so that the Board can meaningfully consider whether his memorandum was derived solely from overt sources as he maintains. If, after a careful review of the *specific* public source information plaintiff purports to rely upon, the parties disagree about whether a particular assertion contains information not fully in the public domain, plaintiff will have ample opportunity to again seek redress in district court.

**ARGUMENT**

**I.**    ***Stillman v. CIA* Requires this Court to Deny Plaintiff's Motion for Access**

Plaintiff does not dispute that the present motion raises the same issues addressed by the D.C. Circuit in *Stillman*. On the contrary, plaintiff openly concedes that "[t]he facts surrounding the two cases are essentially the same." Motion to Compel Defendant to Provide Access to "Classified" Documents to Plaintiff and His Counsel ("Mot. Compel") (Dkt. no 11) at 9. Nevertheless, and in direct contravention of the D.C. Circuit's holding that principles of constitutional avoidance require this Court to withhold judgment on a constitutional question that need not be reached, plaintiff invites this Court to re-issue the opinion the D.C. Circuit vacated in *Stillman*. *Id.* Plaintiff candidly admits that the entire point of this exercise would be to force the government to appeal such a ruling, at which time he hopes to obtain a ruling on the constitutional arguments his motion raises. *See id.* ("If the CIA wishes to appeal the determination, *so be it*. The issue is of constitutional importance and deserves to be determined once and for all." (emphasis added)).

Curiously, in light of the aforementioned concession that "[t]he facts surrounding the two cases are essentially the same," *id.*, plaintiff nevertheless attempts to persuade the Court that *Stillman* is distinguishable and need not be followed. This distinction is illusory. Plaintiff contends that "[t]he facts in the instant matter are actually stronger than that in *Stillman*," because in this case his attorney had access to "the specific information" in the memorandum "due to his participation in classified meetings with the CIA's Office of Inspector General and a review of related documents." Mot. Compel at 5-6; *see also* Declaration of Mark S. Zaid ("Zaid

Decl.") ¶ 3 ("I have, in fact, participated in classified meetings with Boening and the defendant

Central Intelligence Agency ("CIA") to discuss or review the specific documents at issue in this

case."). This argument is misleading; it incorrectly implies that granting the motion would not

expand the access which plaintiff and his counsel were previously afforded to the government's

classified submissions. This is simply not true. First, it is beyond question that neither plaintiff

nor his counsel have seen the *ex parte*, *in camera* declaration to which they seek access.[2]

Second, plaintiff's counsel was never granted access to the classified memorandum. Instead,

"OIG permitted Mr. Zaid to review its final report, which included two classified paragraphs that

related to the subject of the May 10, 2001 Boening memorandum that is the subject of this

litigation, but did not permit Mr. Zaid to review that memorandum itself." Declaration of John

L. McPherson ("McPherson Decl.") ¶ 7 (attached as Exh. A). Counsel's review of those two

paragraphs discussing the memorandum, pursuant to a limited security approval executed for the

narrow purpose of assisting his client in proceedings "related to perceived acts of retaliation (all

of which OIG found to be without merit and declined to pursue further)," *id.* ¶ 6, in no way

entitles him to gain access to the entire memorandum, let alone the government's classified *in

camera*, *ex parte* declaration.[3]

---

[2] This fact further underscores why plaintiff's attempt to distinguish this case from *Stillman* is illusory. There, as here, plaintiff's counsel sought access "both to the classified portions of the manuscript *and to the Government's classified pleadings*." *Stillman*, 319 F.3d at 547 (emphasis added). Thus, plaintiff's contention that this case is unlike *Stillman* because it presents the purportedly "separate and distinct" question of "to what extent and when, if ever, are either plaintiff and/or his counsel permitted to gain access to the 'classified' declaration submitted by the defendant agency to support the Government's position in this litigation?," Mot. Compel at 5, is incorrect.

[3] Plaintiff's counsel describes himself as "cleared counsel." *See, e.g.*, Compl. ¶ 44(6) (describing plaintiff's attorney as "cleared counsel"); Mot. to Compel at 9 ("Boening and his

-4-

Of course, plaintiff himself did have access to the memorandum throughout the PRB process. In recognition of that fact, the government offered to assist plaintiff in lodging *in camera* any potentially classified materials that he wished to file in support of his First Amendment claim. *See* Exh. B, Letter from Michael P. Abate, Trial Attorney, U.S. Department of Justice, to Mark S. Zaid, Counsel for Plaintiff (July 26, 2007) ("[W]e would like to offer your client assistance in filing *in camera* any declarations and supporting material that he might wish to submit for the Court's review."). However, as in *Stillman* – where the government extended a similar offer to the plaintiff – Mr. Boening declined to accept the government's offer of assistance in making such an *in camera* filing. Instead, he attempted to file on the public record the large quantity of materials that, he claims, supported the assertions in his memorandum deemed classified by the CIA.[4]

But the fact that plaintiff previously had access to the classified memorandum during the PRB process does not dictate a conclusion that he also has a need-to-know that classified information in connection with this civil litigation. *See* McPherson Decl. ¶ 11. On the contrary,

---

attorneys already possess the requisite clearance from the CIA for access to SECRET information."). The vagueness of this representation is misleading. Plaintiff's counsel was not given a "clearance." Instead, he was granted only a "limited security approval" in connection with his representation of his client in proceedings in front of the CIA's Office of Inspector General. That approval is "a security determination that is more restrictive in scope than a security clearance," and only applies with respect to "specific CIA information at a specific classification level for a specific purpose." McPherson Decl. ¶ 5. "A request for different classified information, a different matter, a different case, or a different client requires a separate request for a new limited security approval." *Id.* ¶ 5 n.1

[4] As noted *infra*, plaintiff's counsel agreed to submit any filings to the CIA for classification review in advance of lodging them on the public record. In reviewing these materials, the CIA requested that plaintiff not file them publicly because, in connection with certain allegations in the Complaint, they risked revealing properly classified information. Plaintiff consented to the CIA's request and deleted those materials prior to filing. *See* Boening Decl., Exh. "A" - "OOOO."

the CIA determined that neither Mr. Boening nor his attorney possess the need-to-know the

classified material in the government's filings because "neither Mr. Zaid nor Mr. Boening are

performing a lawful and authorized governmental function, but rather are seeking to vindicate

through litigation Mr. Boening's private grievance against the CIA." *Id.* ¶ 10; *see also* Koch

Decl. ¶ 32 n.6 (noting CIA's determination that plaintiff has no need-to-know the information

contained in the memorandum). *Stillman* is clear that before the Court undertakes to determine

whether it can override the CIA's determination that a person has no need-to-know specific

classified information in connection with prepublication review litigation, it first must determine

whether the government's *in camera*, *ex parte* filings sufficiently demonstrate the

memorandum's classified nature.

Simply put, the First Amendment argument presented by plaintiff's motion is no different

than the argument rejected by the D.C. Circuit in *Stillman*.  The Court therefore should proceed

to consider whether the memorandum is properly classified, viewing the government's *in camera*

submissions "with the appropriate degree of deference owed to the Executive Branch concerning

classification decisions." *Stillman*, 319 F.3d 549.  With regard to *that* question, this case is in

fact much easier than *Stillman*.  Plaintiff failed to meet his legal burden of even identifying the

specific public source material from which he claims to have derived the assertions deemed

classified by the CIA.  Therefore, this Court should grant defendant's Motion to Dismiss and

Motion for Summary Judgment.

**II.    This Court Should Grant Defendant's Motion for Summary Judgment on Plaintiff's
First Amendment Claim**

Plaintiff's opposition to the United States' Motion to Dismiss and Motion for Summary

Judgment portrays this suit as a dispute about First Amendment principles when, in fact, that is

simply not true.  In fact, the parties *agree* about the two central First Amendment principles at

issue in this case.  First, if the information in the memorandum is properly classified, plaintiff

may not publish it.  *See* Plaintiff's Opposition to Defendant's Motion to Dismiss Under Rule 12

and Motion for Summary Judgment Under Rule 56 and Memorandum of Points and Authorities

in Support of Plaintiff's Cross-Motion for Summary Judgment (Dkt. no 9) ("Pl. Opp.") at 14-15

(Plaintiff disavows any argument that "he possesses a First Amendment right to publish *properly*

classified information"); Mot. Dismiss at 26-27 (collecting authorities for the proposition that,

even absent a secrecy agreement, the government may forbid the publication of properly

classified information).[5]  Second, if plaintiff's memorandum contains information derived only

---

[5] Because Plaintiff does not maintain a right to publish properly classified material, the
argument that his secrecy agreement does not cover classified information that he did not acquire
in the performance of his job duties, *see* Pl. Opp. at 27-29, is merely an attempt to distract this Court
from the question of whether the information in his memorandum is or is not properly classified.
If so, as plaintiff concedes, the CIA may properly deny him permission to publish it.  Moreover, and
notwithstanding his arguments about the scope of his secrecy agreement, plaintiff also concedes that
he was required to submit the memorandum for prepublication review.  *See id.* at 27 n.24 ("This
argument does not eliminate Boening's obligation to submit *any writings*, *even when created outside
the scope of employment*, for prepublication review.  Of course, that requirement extends into
perpetuity." (emphasis added)).  This concession, too, undermines his suggestion that the CIA was
only permitted to review his memorandum for classified material on issues that he was assigned to
handle while at the agency.  Finally, even if this argument were a correct statement of the law –
which it is not – plaintiff still could not prevail under it for the simple reason that he failed to meet
even the minimal burden of identifying the purportedly overt sources for the information in his
memorandum.  Thus, his claim that the memorandum was derived solely from material in the public
domain fails as a matter of law.

from overt sources, he may publish it. *See* Pl. Opp. at 18 (arguing that the "government may not censor information obtained from public sources"); Mot. to Dismiss at 40 (noting that CIA informed plaintiff he could publish the memorandum if he included adequate pinpoint citations demonstrating that each piece of material deemed classified was derived from an overt source).

The dispute between the parties, therefore, centers on a much narrower question: has plaintiff demonstrated that he obtained the information deemed classified by the CIA from an overt source rather than from classified information that plaintiff may have had access to – either authorized or not – by virtue of his employment at the CIA?  As explained in greater detail below, plaintiff has not even properly attempted to meet that burden. The memorandum lacks citations sufficient to identify those purportedly overt sources.  Moreover, his decision to provide the PRB with a large volume of documents in lieu of specific citations was inadequate as a matter of law to discharge that burden.

Before discussing why defendant's motion should be granted, it must be noted that plaintiff had – and retains – ample opportunity to publish his memorandum without involving this Court in time-consuming litigation.  If, as plaintiff contends, he never accessed classified information in drafting the memorandum, he should be able to identify specific, public source materials for those assertions in his memorandum that the CIA deemed to be classified.  Although plaintiff has to date refused to do so, *see* Koch Decl. ¶ 36 (noting plaintiff "has not to date[] revised his memorandum to include the specific open source citations linked to each sentence and paragraph as required by the CIA"), the PRB nevertheless remains willing to work with plaintiff to produce an unclassified version of his memorandum.  To restart that

collaborative process, he must resubmit his memorandum to the PRB with the requested pinpoint citations that will allow the Board to determine, in the first instance, whether the assertions the CIA deemed classified are drawn from overt, rather than classified, sources.

> **A.      Plaintiff Failed to Meet His Burden of Identifying the Purported Overt Sources for the Assertions the CIA Deemed Classified**

There can be no dispute that plaintiff bears the burden of identifying overt sources for the assertions in his memorandum that the CIA deemed classified. Nor does he deny it. *See, e.g.*, Pl. Opp. at 20. As the D.C. Circuit observed in *McGehee v. Casey*, 718 F.2d 1137, 1141 n.9 (D.C. Cir. 1983), "[a]n ex-agent should demonstrate . . . at an appropriate time during the prepublication review, that such information is in the public domain." The reason for this requirement is clear: without specific guidance from plaintiff as to exactly which information he relies upon, the PRB has no meaningful way of making the careful comparison that is required in order to determine whether a particular assertion touching on classified intelligence matters is in fact in the public domain. *See, e.g.*, Mot. Dismiss at 37-38 (discussing the stringent three-part test that courts in this Circuit apply to determine whether information has entered the public domain).[6] In light of the careful analysis that must be performed in considering whether information has entered the public domain, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of *pointing to specific information* in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)

---

[6] This fact illustrates why plaintiff's argument concerning the CIA's "control" of the information in plaintiff's memorandum is a red herring. Contrary to plaintiff's assertion, *see, e.g.*, Pl. Opp. at 23-26, the CIA never asserted "control" over newspaper articles or other overt sources. The CIA merely asserts control over its own information, described in the Classified DiMaio Declaration, and requested that plaintiff identify the overt sources on which he purported to rely.

(citing *Military Audit Project v. Casey*, 656 F.2d 724, 741-45 (D.C. Cir. 1981)).  Plaintiff's writings and actions demonstrate that he failed to meet this burden of pointing to specific information.  Unless and until he is willing to do so, neither the PRB nor this Court can meaningfully assess whether any of his assertions concerning properly-classified information are drawn from public source material.  Thus, his First Amendment claim fails as a matter of law.

1.    *Plaintiff's Memorandum Lacks Citations Sufficient to Identify Overt Sources for the Assertions the CIA Deemed Classified*

In an attempt to justify his refusal to provide the PRB with the requested citations, plaintiff argues that his citations *are* adequate, although he concedes that they "may not have met the academic standards of Harvard University."  Boening Decl. ¶ 17.  Plaintiff further argues that his memorandum "is actually sourced in quite amount [sic] of detail," and that "[a]nyone who reads the document carefully will find a specific source and a date attached to *most* entries in the chronology and a full list of sources in the bibliography."  *Id.* (emphasis added).

These assertions are demonstrably false.  The Court need only glance at the unredacted version of plaintiff's memorandum, which is attached to the Classified DiMaio Declaration, to see that plaintiff's purported "citations" are not sufficient under *any* standard.  In most cases, plaintiff's memorandum lacks any citations whatsoever to the assertions deemed classified.  And, even in the instances where he attempted to "source" his assertions, plaintiff never once provided a pinpoint citation that included information about the name of the book or article he was citing, the specific date of that publication, and the page number at which the assertion appears.  Put simply, there is not one adequate open source citation for any assertion contained in the document.

-10-

Upon reviewing the memorandum further, this Court will observe that:

- Pages 1-8 of plaintiff's memorandum, as well as pages 22-23, are devoid of any citations, even though the CIA identified a substantial amount of classified material on these pages.

- The memorandum's "chronology" section (pages 9-21), which was redacted in its entirety by the CIA because it consists of properly classified information, does not contain a single pinpoint citation adequate to meet minimal citation standards (including, for example, the publication, author, title, date, and page number of the relevant source). Indeed, well over one-third – and nearly one-half – of the approximately 90 "entries" in this chronology are devoid of any citations, or merely state that the source for that information was "various." Moreover, even the remaining entries, which purport to provide detail about the sources consulted, lack relevant information that would allow a reader, the PRB, or this Court to pinpoint the source of that information; those entries simply attribute the memorandum's assertion to an author, an organization, or a media outlet, without clarifying the date, title of publication, or – most importantly – the page number or portion of relevant transcript at which those assertions appear.[7]

- The memorandum's two "unclassified" and one "classified" annexes, like pages 1-8 and 22-23 of the memorandum, are utterly devoid of any citations for the information that the CIA has deemed classified.

- Finally, the "bibliography" submitted by plaintiff is insufficient to cure the citation deficiencies in the rest of the document. That "bibliography" consists of nothing more than a list of the names of publications or internet websites that plaintiff claims to have consulted, and is completely devoid of the titles of specific articles in those publications, the authors of such articles, and the dates at which those articles appeared. To provide just a few examples, the "bibliography" (which is included in the redacted version of plaintiff's memorandum attached as Exhibit 2 to Plaintiff's Opposition and Cross-Motion) includes entries no more detailed than: "Associated Press," "CBS News," "CNN," "Cornell University," "LA Times," Miami Herald," "New York Times," "US Department of State Website," and "Washington Post." Moreover, these purported bibliographic citations are listed in alphabetical order, and thus are not linked in any meaningful way to the places in the memorandum at which the classified information supposedly derived from those publications appear.

This deficient attempt at providing citations – which this Court readily can see without

assistance from plaintiff or his counsel – means that plaintiff's memorandum, on its face, does

---

[7] Adding to the confusion, plaintiff appears to cite to multiple works by some authors without distinguishing among those authors' writings.

not identify any of the purportedly overt sources for the information the CIA deemed classified.

Thus, without further assistance from plaintiff, the PRB cannot determine wither his

memorandum is, as he contends, derived only from public source materials.

> 2. *Plaintiff's Decision to Provide PRB with a Large Volume of Material, in Lieu of Specific Citations to Publications, Was Insufficient to Discharge His Burden to Identify His Overt Sources*

Like his writings, plaintiff's actions also failed to satisfy his burden of identifying the

specific overt source information on which he relies.  In lieu of providing the PRB with the

specific, pinpoint citations they requested, he simply "delivered source documents" to the PRB.

Boening Decl. ¶ 18.  Plaintiff contends that this act was sufficient to meet his burden in

demonstrating the overt nature of his assertions.  *See* Pl. Opp. at 20 (arguing that plaintiff

discharged this burden).  Courts have correctly rejected the argument that it is the government's

burden to wade through large volumes of material, without the benefit of pinpoint citations,

looking for sources that could support the assertions plaintiff believes to be in the public record.

*See, e.g.*, *McGehee*, 718 F.2d at 1141 n.9 ("The CIA cannot reasonably bear the burden of

conducting an exhaustive search to prove that a given piece of information is not published

anywhere."); *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 772 n.43 (S.D.N.Y. 1979) (plaintiff's

argument that the government could "make a . . . search of the public record to determine

whether confidential sources have been disclosed cannot be accepted because such a search

would be virtually limitless").  It is not the PRB's job to wade through the large stack of

documents provided by plaintiff to try to match up each unsourced, classified assertion in

plaintiff's memorandum to a book or article that could have been specifically referenced by the

author, but was not. This is especially true with reference to plaintiff's memorandum, which (as noted *supra*) provides no citations, or merely cites to "various," for the vast majority of assertions deemed classified by the CIA.

Moreover, plaintiff has compounded this error by attempting to shift that same burden onto the Court as well. In support of his Cross-Motion for Summary Judgment, plaintiff attempted to file a large quantity of documents on the public record in the apparent hope that this Court would be willing to read through that stack of papers, matching up unsupported assertions in the memorandum with published sources, even though the memorandum contained zero pinpoint citations. *See* Pls. Opp. at 17 (attempting to direct this Court's attention to "Exhibits 'A' - 'OOOO'").[8] That assumption is simply unreasonable given the large number of completely unsupported assertions deemed classified by the CIA, the volume of information plaintiff proposed to submit to this Court, and the Court's busy docket. Neither this Court nor the PRB should be transformed into plaintiff's fact-checkers or otherwise made to bear his burden of clearly identifying the specific public source information that he claims to be relying upon.

---

[8] Consistent with his limited security approval, plaintiff's counsel has agreed to submit his filings to the CIA in advance for review to see if they contain any potentially classified information. As noted *supra*, the CIA expressed its concern that the filing of even overt sources, in combination with the allegations in plaintiff's complaint, might risk disclosing properly classified information. *See* Exh. B. Therefore, the defendant offered to assist plaintiff himself in making an *in camera* filing of these materials. Plaintiff declined that offer and, instead, attempted to file these materials on the public record.

**B.**     **Plaintiff's Other Arguments Opposing Summary Judgment on His First Amendment Claim Lack Merit**

           *1.*     *The CIA Properly Required Plaintiff to Remove the Memorandum From Its Official-Looking Format and Include the Disclaimer Mandated by the PRB Rules*

Plaintiff also contends that the CIA erred by requiring him to remove the memorandum from its official-looking format and to insert the disclaimer mandated by the PRB regulations (stating that the views expressed in his writings are his own and not those of the agency).  His refusal to make these changes, which evinces a desire to cloak himself in the CIA's mantle while producing supposedly personal writings, heightens the unacceptable risk that readers and foreign intelligence services would wrongly construe his unsourced speculations as statements of classified fact and official agency position.

Plaintiff's sole argument against the requirement that he remove the memorandum from its official-looking format is that the CIA did not require him to remove other memoranda from similar formats before publishing them.  *See* Pl. Opp. at 33.  This argument is a red herring because the CIA determined that none of those memoranda contained classified information whose wrongful attribution to the CIA could harm the United States' intelligence-gathering activities or national security.  *See* Mot. Dismiss at 2 n.1 (noting that the PRB granted plaintiff permission to publish the other memoranda referenced in his complaint).  It does not follow that the CIA must therefore also permit plaintiff to publish this memorandum, which does contain classified information, in a similar format that incorrectly suggests the memorandum was drafted as part of his official CIA duties.

Moreover, plaintiff's refusal to include required disclaimer language stating that the

views expressed in his memorandum are his own and not those of the CIA, even though he concedes to this Court that "the arguments contained in the 'M Complaint' do not represent the CIA's official position on this particular topic," Pl. Opp. at 35, was unreasonable. Indeed, plaintiff goes so far as to suggest that it violates the First Amendment for the CIA to insist that he not pass off his own personal views as views of the agency. This argument lacks merit. Nothing in the First Amendment or plaintiff's secrecy agreement prohibits the CIA from requiring employees to specify that personal writings touching on classified information do not constitute official statements of agency policy. This is especially true in the arena of national security matters, where the dangers attendant to even apparent confirmations are so severe. *See, e.g.*, *Afshar*, 702 F.2d at 1130-31 ("Unofficial leaks and public surmise can often be ignored by foreign governments that might perceive themselves to be harmed by disclosure of their cooperation with the CIA, but official acknowledgment may force a government to retaliate."); *Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) ("In the world of international diplomacy, where face-saving may often be as important as substance, official confirmation of [alleged intelligence activities] . . . could have an adverse effect on our relations with [other countries].").

Plaintiff does not cite any case law for the proposition that this disclaimer requirement violates the First Amendment. Instead, he merely attacks defendant's motion for relying upon an opinion from Judge Wald that dissented *in part* from that panel's holding. *See* Pl. Opp. at 31. Plaintiff cites the fact that it was a dissenting opinion – without noting that it was dissenting only in part – as if that somehow rendered the opinion's analysis irrelevant. What plaintiff neglects to

-15-

mention, however, is that Judge Wald was proposing that such a disclaimer requirement be instituted as a less restrictive, yet appropriate, alternative to a system of prepublication review that she considered unconstitutional in those circumstances.  *See Weaver v. U.S. Information Agency*, 87 F.3d 1429, 1453-54 (D.C. Cir. 1996).[9]  Where, as here, plaintiff concedes the more restrictive prepublication review requirement is constitutional, *see* Pl. Opp. at 14-15 ("To start, Boening is neither asserting that the prepublication review process is unconstitutional or that he possesses a First Amendment right to publish *properly* classified information." (citing *Snepp v. United States*, 444 U.S. 507, 510 (1980)), he cannot contend that the less restrictive disclaimer somehow runs afoul of the First Amendment.

In a final effort to evade the disclaimer requirement, plaintiff argues that it did not apply to him.  This argument is frivolous.  Plaintiff admits that, by virtue of his secrecy agreement, he agreed to submit his memorandum for prepublication review.  *See* Pl. Opp. at 30 & Koch Decl. Exh A.  Plaintiff further admits that at the time he submitted his memorandum for prepublication review, the controlling regulation encouraged everyone, and *required* current employees – which he was at the time – to include such a disclaimer.  *See* Pl. Opp. at 31 n.27 & Koch Decl. Exh. B ¶ 2.i.(5) (1995 PRB Regulation).  Moreover, plaintiff does not dispute that the 2005 PRB regulation – in effect at the time the PRB issued its final decision with regard to plaintiff's memorandum – required the disclaimer for all *current and former* employees.  *See* Pl. Opp. at 30 (citing 2005 PRB Regulation); Koch Decl. Exh. C ¶ 2.b.(4) (2005 PRB Regulation).  And,

_____

[9] Judge Wald's opinion nevertheless recognizes that the CIA's interest in protecting classified information to which former employees may have had access, at issue in this case, is more than sufficient to justify a prepublication review requirement.  *See Weaver*, 87 F.3d at 1451-53.

although plaintiff attempts to imply that he should be considered a "former employee" under the 1995 regulation for purposes of the disclaimer requirement, *see* Pl. Opp. at 31 n.27, that contention is meritless because the 2005 regulation went into effect on July 22, 2005 – almost a month prior to plaintiff's August 13, 2005 retirement from the Agency.  *See* Koch Decl. Exh. C at 1 (2005 PRB Regulation) (noting effective date of July 22, 2005).  Thus, at all times during the PRB process, plaintiff was required to include the disclaimer he now protests.

     2.     *The CIA Has Not Classified Plaintiff's Memorandum Because It Alleges Violations of Law*

Plaintiff claims that the CIA cannot be permitted to classify his memorandum because it alleges that the CIA violated the law.  *See, e.g.*, Pl. Opp. at 16, 20-23 (citing E.O. 13292 §§ 1.7(a)(1)-(2)).  This argument assumes that merely alleging illegal behavior is somehow sufficient to overcome the deference that is due to the government's affidavits averring that the information is classified for proper purposes.  That is not the law.  On the contrary, a court in this jurisdiction rejected a nearly identical contention in a case where the plaintiff claimed that the government's classification of certain information concerning the allegedly illegal Terrorist Surveillance Program ("TSP") was impermissible under Section 1.7 of the E.O. 12958, as amended.[10]  The court summarily rejected that argument, noting that:

> Even if the TSP were ultimately determined to be illegal, it does not follow that the NSA's decision regarding the classification of materials relating to the TSP was made 'in order to . . . conceal violations of law.'  Because of the deference

---

[10] Executive Order 12958 was amended by Executive Order 13292, effective March 25, 2003.  *See* Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to E.O. No. 12958 ("Executive Order") are to the Order as amended by Exec. Order No. 13292.  *See* Exec. Order 12958, 3 C.F.R., 1995 Comp. at 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 note at 180 (West Supp. 2007).

due to the NSA in matters of national security, and in the absence of any evidence
to the contrary, the Court must accept defendant's reasonable explanation that the
materials were classified in order to prevent damage to the national security.

*People for the American Way Foundation v. National Security Agency/Central Security Service*,

462 F. Supp. 2d 21, 33 (D.D.C. 2006); *see also Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir.

1982) ("Once satisfied that proper procedures have been followed and that the information

logically falls into the exemption claimed, the courts 'need not go further to test the expertise of

the agency, or to question its veracity when nothing appears to raise the issue of good faith.'"

(citing *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977)); *Canning v. U.S. Dep't of Justice*,

848 F. Supp. 1037, 1048 (D.D.C.1994) (rejecting argument that information was classified to

conceal violation of law or to prevent embarrassment where plaintiff "offered little more than

conjecture in support of his theory that the agency's withholding decisions are in violation" of

executive order).

      This court similarly should afford the CIA the "deference due" to its judgment that the

information in plaintiff's memorandum was classified for proper purposes: namely, because it

concerned (1) foreign government information (E.O. 12958, as amended § 1.4(b));[11] (2)

information concerning intelligence activities, sources, or methods (E.O. 12958, as amended §

1.4(c)); or (3) information concerning foreign relations or foreign activities of the United States,

including confidential sources (E.O. 12958, as amended § 1.4(d)).  *See* Unclassified DiMaio

---

[11] Plaintiff asserts that the information in his memorandum cannot constitute "'foreign
government information'" because it was derived solely from public sources. *See* Pl. Opp. at 21
n.18. This argument is flawed for the reason discussed at length above; plaintiff is simply not entitled
to a presumption that the information in his memorandum is merely "public source" material when
he refuses to specifically identify the overt material on which he purports to rely.

Decl. ¶ 11, 14; Moreover, even if this Court were to accept plaintiff's invitation to "look behind the propriety of the CIA's decision," Pl. Opp. at 22, it would uncover nothing to suggest that the CIA's classification decision turned on a desire to prevent embarrassment or shield supposedly illegal behavior.  On the contrary, the information in the memorandum was deemed classified for valid reasons.  *See, e.g.*, Classified DiMaio Decl. ¶¶ 10-47.  Plaintiff's unsubstantiated speculation to the contrary is, thus, without merit.

### 3.     *Discovery Is Not Required on Plaintiff's First Amendment Claim*

Plaintiff also argues that this Court should not enter summary judgment for the CIA on his First Amendment claim without allowing discovery on the question of where he derived the information that appears in his memorandum.  This contention is curious in light of the (erroneous) legal theory advanced by plaintiff.  He maintains that the CIA cannot prevent him from publishing the memorandum because he has submitted a declaration stating that he never accessed classified materials.  *See* Pl. Opp. at 25.  This argument, if correct, would place the burden on the CIA to prove that the source of the information in the memorandum was classified. Of course, that legal premise is incorrect; plaintiff bears the burden of identifying the overt sources from which he derived the information in his memorandum.  *See McGehee*, 718 F.2d at 1141 n.9; *Afshar*, 702 F.2d at 1130.  But even if plaintiff were correct, it would not explain why plaintiff needs discovery on the source of his information – an issue that he (incorrectly) contends must be proved by the CIA.

Moreover, plaintiff's additional claim that discovery also is required to determine if the CIA has "taken affirmative steps to conceal" an alleged relationship described in plaintiff's

memorandum is without merit.  *See* Pl. Opp. at 29.  Plaintiff does not even attempt to explain

why this information would be legally relevant to his argument that the information in the

memorandum is not classified.  Nor has he provided any non-speculative reason for assuming

that the CIA failed to take such "affirmative steps" (which he implies, without citation, that they

must do to assert that the memorandum is properly classified).  Yet Rule 56(f), under which

plaintiff seeks this discovery, requires him to do both things.  *See, e.g.*, *Byrd v. EPA*, 174 F.3d

239, 248 n.8 (D.D.C. 1999) (noting that non-moving party bears burden of "show[ing] what facts

he intended to discover that would create a triable issue" and that "'[i]t is well settled that

[c]onclusory allegations unsupported by factual data will not create a triable issue of fact'"

(citations omitted)).

Ultimately, plaintiff's claim that discovery is required is simply meritless because no

discovery is required to settle the narrow legal issue dispositive of this case; plaintiff failed to

meet even his minimal burden of identifying the specific, overt material that he believes support

the assertions deemed classified in his memorandum.

* * * * *

In sum, plaintiff failed to meet his threshold burden of even identifying the specific public

source information on which he purported to rely.  Moreover, his other arguments opposing

summary judgment lack merit.  Thus, this Court should grant defendant's Motion for Summary

Judgment on plaintiff's First Amendment claim.

-20-

III.    **This Court Should Grant Defendant's Motion to Dismiss Plaintiff's APA Claims**

In addition to granting the CIA's Motion for Summary Judgment on plaintiff's First Amendment claim, this Court should also grant defendant's Motion to Dismiss plaintiff's APA claims, which assert that the PRB failed to timely process his submission, and that the CIA erred in denying him the right to "officially" challenge his memorandum's classification under E.O. 12958, as amended.  For the reasons explained at greater length in the CIA's Motion to Dismiss and For Summary Judgment (Dkt. No. 4), this Court lacks jurisdiction over both claims.  *See* Mot. Dismiss at 16-22.  Moreover, for the reasons noted below, nothing in plaintiff's opposition to the CIA's motion cures those jurisdictional deficiencies.

A.    **Plaintiff's Claim Regarding the Processing of His PRB Submission Within 30 Days is Moot**

Plaintiff claims that the PRB violated the APA by failing to issue a final decision on his request to publish the memorandum within 30 days of its submission.  Plaintiff advances this argument even though nothing in the PRB regulations requires the review to be completed within 30 days,[12] and even though this Court rejected an identical argument as moot in *Stillman v. CIA*, F. Supp. 2d __, 2007 WL 1020814, at *3 (D.D.C. 2007) ("[T]here is no further relief that this Court can provide as to that claim. [Plaintiff] has already received the final classification decision that he sought from the defendant agencies.").

_____

[12] The 30-day deadline is an aspirational goal.  *See* Koch Decl., Exh. B (1995 regulation) ¶ 2.e.(4) ("The Agency will make *every effort* to complete the initial review of submitted material and respond to authors within 30 days of receipt by the PRB or other reviewing official.") (emphasis added); *id.* Exh. C (2005 regulation) ¶ 2.d.(4) ("As a general rule, the PRB will complete prepublication review for nonofficial publications within 30 days of receipt of the material. . . . *Lengthy or complex submissions may require a longer period of time for review*, especially if they involve intelligence sources and methods issues.") (emphasis added).

-21-

Plaintiff cannot and does not deny that the PRB has completed processing his request for permission to publish his memorandum, as was the case in *Stillman*. Nevertheless, and despite Art. III's command that "federal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990), plaintiff claims that this Court should reject the jurisdictional analysis it applied in *Stillman* and rule on his APA claim. Plaintiff advances two arguments in support of that contention; neither has merit.

First, plaintiff argues that the claim is not moot because in this case, unlike *Stillman*, "Boening's submission has not properly been reviewed through the ARP process." Pl. Opp. at 45. Aside from being wrong – the CIA correctly concluded that he was not entitled to challenge the document's classification, *see infra*; Mot. Dismiss at 22-23 – this argument is entirely beside the point. Whether he was entitled to challenge the document in front of the ARP has no bearing on whether the PRB has completed its review of his submission.[13] The PRB has completed its review, and, as in *Stillman*, there is no further relief that this Court could award in these circumstances.

Second, and as explained in defendant's Motion to Dismiss, plaintiff's claim does not fall into the narrow category of cases for which the "capable of repetition yet evading review" exception to the mootness doctrine applies. *See* Mot. Dismiss at 18-19. To be sure, plaintiff signed a declaration stating that he submitted a new document to the PRB on November 12,

---

[13] Plaintiff himself concedes as much elsewhere in his brief – in claiming that the PRB violated the APA by taking too long to review his memorandum – when he argues that "the CIA's reference to Boening's classification challenge and submission to the ARP *is completely irrelevant*" for the purposes of calculating how much time the PRB spent considering his submission. Pl. Opp. at 47 (emphasis added). This argument demonstrates that, even in plaintiff's view, the ARP process is separate and distinct from the PRB process.

2007, for classification review.  *See* Boening Decl. ¶ 27.  And he contends, relying upon that fact (and a generalized intent to submit other documents to the PRB in the future), that he has demonstrated a likelihood of suffering similar delays in the future.  *See* Pl. Opp. at 45.  What plaintiff fails to mention is that he received permission to publish that new submission on November 15, 2007 – which was only three days after its submission and, more importantly, *four days prior to filing a declaration with this Court* suggesting that the submission of that document somehow renders this APA claim a live controversy.  It does not.  *See* Exh. C (November 15, 2007 e-mail communication from PRB to Franz Boening stating that the PRB "completed its review of your manuscript . . . .  The Board has no objection to its publication.").[14]  This Court should deny plaintiff's APA claim as moot, just as it did in *Stillman*.

> **B.    This Court Lacks Jurisdiction Over Plaintiff's APA Claim Regarding His Attempt to Bring an "Official" Classification Challenge**

Plaintiff also alleges that the CIA violated the APA by requiring him to submit his memorandum to the PRB for prepublication review instead of permitting him to bring an "official" classification challenge under E.O. 12958, as amended.  The CIA explained in its initial motion that the Court lacks jurisdiction over this argument because there is no meaningful relief that it could award in light of the procedural history in this case (namely, that plaintiff's memorandum was reviewed for classification on no fewer than five occasions).  Mot. Dismiss at

---

[14] If anything, this new submission only underscores the reasonableness of the PRB's actions throughout this case.  The PRB acts expeditiously to process submissions.  That process is inevitably slowed, however, when an author fails to provide adequate citations that would allow the PRB to verify that his information is not derived from classified sources.  In this case, it was only after it became clear that plaintiff would not provide the information requested by the PRB that the Board issued its final determination denying permission to publish the memorandum as written.

21-22; Koch Decl. ¶ 6.  Moreover, defendant also explained why this claim must fail on the

merits.  *Id.* at 22-23.  Plaintiff's attempts to rebut these arguments are not compelling.

>    1.    *There Is No Meaningful Relief this Court Could Award With Regard to Plaintiff's Classification Challenge*

Plaintiff bears the burden of demonstrating that he has properly invoked this Court's

jurisdiction.  *See Center For Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 64 (D.D.C.

2006) (party that seeks to invoke the federal court's jurisdiction "bears the burden of establishing

by a preponderance of the evidence that the Court possesses jurisdiction").  Plaintiff cannot meet

that burden with respect to this APA claim because he has not established – and cannot establish

– that this Court could afford any meaningful relief in the context of this case.  Without the

prospect of such relief, plaintiff cannot pursue a remedy from this Court.  *See, e.g.*, *NLRB v.

Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) ("To remand would be an idle and useless

formality . . . . There is not the slightest uncertainty as to the outcome of a proceeding before the

Board . . . . It would be meaningless to remand."); *Cruz v. American Airlines*, 150 F. Supp. 2d

103, 119 (D.D.C. 2001) ("[E]ven if the Court were to issue the requested declaratory and

injunctive order, the Cruz Plaintiffs would receive no meaningful relief . . . . Because they have

failed to demonstrate how the requested relief redresses this injury, Plaintiffs lack standing to

bring this claim.").

Plaintiff's only argument for why he might yet obtain meaningful relief is to note that the

letter from the Executive Secretary of the ISCAP/ISOO, which explained that he exercised the

power granted to him under E.O. 12958, as amended § 5.2(b)(6) to consider plaintiff's

classification challenge even though plaintiff was not an authorized holder of the information

being challenged, is not exactly the same thing as consideration by the full ISCAP. That

argument simply ignores the posture of this case: because this litigation also includes a First

Amendment challenge to the PRB's decision, the ultimate decision on classification is to be

made not by the PRB or the ARP (with an appeal to the ISCAP), but by the Court. Once this

Court fulfils its obligation to pass upon plaintiff's classification challenge, there would simply be

no reason to remand the case back to the ARP, even if plaintiff were correct that he is permitted

to "officially" challenge the memorandum's classification (which he is not, for the reasons noted

*infra*). If this Court determines that the document is properly classified – as it should – remand

would be a hollow gesture. There would be no reason to ask the ARP whether the document was

properly classified when this Court has already pronounced that it is (a finding that surely would

constitute law of the case if plaintiff were to attempt appeal from an unsuccessful appeal to the

ISCAP). Similarly, a determination that the memorandum as written is unclassified would also

constitute law of the case; there would be no need to send the matter back to the ARP to

reconsider the question already decided by this Court. There simply is no meaningful relief this

Court could award that would not be rendered moot by its decision on plaintiff's First

Amendment claim.

> 2.    *The CIA Correctly Denied Plaintiff Permission to Bring an Official Classification Challenge*

In any event, the CIA did not err in concluding that plaintiff could not bring an official

classification challenge concerning the memorandum because he was not an "authorized holder"

of the information contained therein. Plaintiff effectively concedes as much. In his attempt to

prevail on his First Amendment claim against the PRB, plaintiff asserts that "at no time did he

even have authorized access to the information [in his memorandum] while employed at the CIA." Pl. Opp. at 25 (citing Compl. ¶ 8 and Boening Decl. ¶ 11). This concession is more than sufficient to refute his claim that he was nonetheless an "authorized holder" of that classified information.

Nevertheless, plaintiff attempts to argue that he is an authorized holder. He proceeds by attempting to create a distinction between the CIA's definition of the term "authorized holder" and the ISOO's definition of that term, and then accuses the CIA of attempting to rely on the supposedly narrower of the two definitions. *See* Pl. Opp. at 43. This argument is without merit, because the CIA's regulation simply does not mean what plaintiff contends. Plaintiff believes that the CIA defines "authorized holder" as *any person* who possesses a security clearance and has access to classified information. *See id.* at 43-44 ("A plain reason [sic] of the [CIA] provision reflects that an 'authorized holder' need only possess a valid security clearance or otherwise be authorized by the CIA to '*possess and use' classified information in general*." (emphasis added)). If that were true, then any person with a security clearance granted access to *some* classified information would automatically become an authorized holder of *all* classified information that their clearance would permit them to see – regardless of whether they have a need-to-know that classified information.

To articulate this argument is to refute it. The term "authorized holder" most naturally means a person who is authorized to possess specific classified information – not just a person who is eligible to possess classified information "in general." Were there any doubt about the plain meaning of that phrase, this Court would need to look no further than E.O. 12958, as

amended to resolve that ambiguity. Because the CIA's regulation was "issued under the authority of and in order to implement § 1.9 of Executive Order (E.O.) 12958," 32 C.F.R. § 1907.01(a), it must be read in light of that Executive Order, which requires that three conditions must be met before a person may access classified information: the person must (1) have a valid security clearance, (2) have signed an approved nondisclosure agreement, and (3) have a need-to-know that specific information. *See* E.O. 12958, as amended § 4.1(a). Plaintiff attempts to distinguish those three requirements by stating that they are merely the requirements for "access[ing]" classified information, implying that issues of access must somehow be distinct from the definition of "authorized holder" status. *See* Pl. Opp. at 43 & n.33. They are not; it would be nonsensical to assume the CIA considers individuals not *permitted* access to material under the Executive Order to nonetheless be considered *authorized holders* permitted to challenge that information's classification under the very same Executive Order.[15]

Because plaintiff was never granted access to the classified material in his memorandum – and, indeed, specifically denies that he ever had such access – he is therefore not an "authorized holder" of that information. This Court should therefore reject his APA claim even if he had standing to pursue it.

---

[15] If Plaintiff were correct about the definition of "authorized holder," then the entire regime of limiting access to classified information would crumble. E.O. 12958, as amended defines the term "need-to-know" – which is a prerequisite of accessing classified information, *see id.* § 4.1(a) – as "a determination made *by an authorized holder of classified information* that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." *Id.* § 6.1(z) (emphasis added). Thus, under plaintiff's view of the law, any authorized holder – *i.e.*, any person with a security clearance permitted to access classified information "in general," *see* Pl. Opp. at 44 – would have the power to make need-to-know determinations about *any* classified information within the government's control.

-27-

**C.    Plaintiff's New APA Claims Are Not Properly Before This Court and Lack Merit in Any Event**

For the first time in this litigation, plaintiff now attempts to challenge the CIA's determination that whistleblower complaints are by definition "personal" documents that must be submitted for prepublication review rather than for official classification challenges. In support of this contention plaintiff raises two entirely new claims. The first new claim contends that the CIA violated the APA by determining that the memorandum was submitted in his personal, rather than official, capacity. *See* Pl. Opp. at 34-36. The second new claim argues that the determination by the Executive Secretary of the Agency Release Panel ("Executive Secretary") that whistleblower complaints are "personal" documents amounts to a "substantive" rule and, therefore, that the CIA violated the APA by issuing that purported rule without providing for notice and comment under the APA. *See id.* at 36-40. These claims are not properly before this Court, and lack merit in any event.

Before explaining why these claims should fail, it must be noted that they are beside the point. In order to officially challenge a document's classification under E.O. 12958, as amended, a person must be both an authorized holder *and* acting in their official capacity. *See* E.O. 12958, as amended § 1.8 (authorized holders are permitted to bring classification challenges pursuant to regulations issued by each agency head); 32 C.F.R. § 1907.02(d) (CIA regulation defining classification challenge as "a request in the individual's official, not personal, capacity and in furtherance of the interests of the United States"). However, as just discussed, plaintiff is not an authorized holder of the information in his memorandum. Thus, even if he submitted his memorandum in his official capacity, plaintiff would not be permitted to bring an official

classification challenge.

>    1.    *Plaintiff's New APA Claims Are Not Properly Before This Court*

Plaintiff's new APA claims are not properly in front of the Court for the simple reason

that they appear nowhere in plaintiff's Complaint.  That Complaint merely alleged that the CIA

improperly determined plaintiff was not an "authorized holder" of the information contained

therein.  *See* Compl. ¶¶ 41-42.  The Complaint only once mentions the CIA's determination that

plaintiff's memorandum was a personal document, and it cites that finding *in support of* the

claim that the CIA was powerless to require plaintiff to insert a disclaimer in, and alter the format

of, his personal writings.  *See* Compl. ¶ 19 ("Additionally, the CIA asserted that Boening's

documents were personal, and not official, in nature.  Thus, the CIA can neither challenge the

format structure nor the contents therein.").  Because plaintiff did not challenge this

determination in his Complaint, he cannot raise this new claim of error for the first time in

response to the CIA's dispositive motion, as he attempted to do, because "plaintiffs may not

amend their complaint through their opposition papers."  *Doe I v. State of Israel*, 400 F. Supp. 2d

86, 100 (D.D.C. 2005) (citing *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C.2004)); *see*

*also Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170

(D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition

to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24

n.8 (D.D.C. 2000)).  This Court should therefore decline to consider plaintiff's new claims.  But

even if this Court considered them, they should be rejected for the reasons noted below.

2.      *The CIA's Determination that Plaintiff Should Submit His Memorandum to the
PRB, Rather Than to the ARP, Is Entitled to Deference*

Interpreting 32 C.F.R. § 1907.02(d) – the CIA's regulation defining official classification

challenges as "a request in the individual's official, not personal, capacity and in furtherance of

the interests of the United States" – the CIA, through the Executive Secretary of the Agency

Release Panel ("ES/ARP"), determined that whistleblower complaints do not fall within the

category of documents whose classification may be reviewed in an official classification

challenge under E.O. 12958, as amended; instead, the CIA determined that if an author of a

whistleblower complaint wishes to publish it, that author should submit the complaint to the PRB

for prepublication review.  Koch Decl. ¶¶ 26-27.  That determination was based on the CIA's

view that whistleblower complaints, which contain the personal views of agency employees

sharing their concerns with the CIA's OIG and/or Congress, do not constitute official agency

business.  *Id.*

This conclusion that whistleblower complaints are personal, rather than official

documents, is correct for several reasons.  First, that determination is consistent with plaintiff's

repeated assertions that his memorandum constitutes a "personal" document that the CIA

improperly deemed classified.  In his Complaint, for example, plaintiff argued that the CIA

improperly deemed classified his "personal" views, and that the CIA erred when it insisted that

he include the disclaimer required by the PRB in his "personal" writings.  *See, e.g.*, Compl. ¶ 8

("Additional, [sic] the CIA not only deleted all references to the foreign individual's name but

also Boening's *personal assessment* of this individual." (emphasis added)); *id.* ¶ 26 ("The CIA

has failed to demonstrate the existence of substantial government interests that would enable it to

-30-

prohibit the publication of certain information within Boening's *personal documents*." (emphasis added)).  Similarly, in opposing the defendant's Motion to Dismiss and Motion for Summary Judgment, plaintiff conceded that "the arguments contained in the 'M Complaint' do not represent the CIA's official position on this particular topic."  Pl. Opp. at 35.[16]

Second, and independent of plaintiff's own description of his memorandum, the text of the statute governing the submission of "Urgent Concern" items to the CIA's Office of Inspector General and Congress undermines his contention that their submission is obviously an official rather than a "personal" act.  50 U.S.C. §§ 403q(d)(5)(D)(iii) notes that "[a] member or employee of one of the intelligence committees who receives a complaint or information under clause (i) does so in that member or employee's *official capacity* as a member or employee of that committee." (emphasis added).  This text strongly undercuts plaintiff's argument.  If it were true that Urgent Concern items (in the form of whistleblower complaints) were by definition official government business, there would be no reason to specify that the receiving of such complaint was an official act.  Moreover, there is no parallel language in that statute declaring the

_____

[16] Attempting to evade the effect of his own pleadings, which state that the memorandum contains only his personal views, plaintiff invents an entirely new distinction between the capacity in which one "drafts" a document, and the capacity in which one "submits" that same document for classification review.  *See* Pl. Opp. at 43 n.32 (contending that he submitted the memorandum in his official capacity even though he drafted it in his personal capacity).  There is no support in any statutory text, regulation, or case law for plaintiff's wholly new and unfounded distinction.  On the contrary, that purported distinction runs counter to the plain language of 32 C.F.R. § 1907.01(b) – the controlling CIA regulation concerning official classification challenges – which states that "[t]his part and § 1.9 of E.O. 12958 confer no rights upon members of the general public, *or authorized holders acting in their personal capacity*, both of whom shall continue to request reviews of classification under the mandatory declassification review provisions set forth at § 3.6 of E.O. 12958." (emphasis added).  That regulation does not permit CIA employees drafting materials in their personal capacity – as plaintiff concedes he did – to nevertheless choose to "submit" it in some official capacity, thereby bypassing the required prepublication review for personal writings.

*submission* of urgent concern items an "official" act.  This silence is telling.  *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).

Third,  and contrary to what is implied by plaintiff's opposition to the CIA's Motion to Dismiss, *see* Pl. Opp. at 34-36, the CIA's determination does nothing to denigrate the importance of whistleblower complaints.  Nor does the determination impede an employee's ability to submit such a complaint to the OIG and/or Congress.  Instead, it simply prescribes the proper channel through which a CIA employee may seek to publish a whistleblower complaint they have drafted in order to share their personal concerns.  Instead of bringing an "official" classification challenge under E.O. 12958, as amended and 32 C.F.R. § 1907.01 *et seq.*, authors simply need to submit that document for prepublication review.  As the facts of this case demonstrate, that PRB review actually provides the author with a greater opportunity to publish the complaint than if the author were merely to submit the document to the ARP.  This is so because the function of the ARP is simply to determine whether a document is properly classified, whereas the function of the PRB is to make a classification determination and, if it chooses to (as it did in this case), to work with the author to revise the document to eliminate any classified information so that it may be published.

In light of the foregoing, it is clear that the CIA's determination that whistleblower complaints containing an author's personal views may not be submitted for official classification

challenges is the better interpretation of 32 C.F.R. § 1907.02(d).  But this Court need not

conclude that the CIA came to the best conclusion to uphold its interpretation.  Because an

agency's interpretation of its own regulation is entitled to deference, the court should uphold the

agency's construction unless it is "'plainly erroneous or inconsistent with the regulation.'"  *Auer*

*v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted); *see also Paralyzed Veterans of Am. v.*

*D.C. Arena L.P.*, 117 F.3d 579, 585 (D.C. Cir. 1997) (agency's interpretation of its own

regulation is entitled to *Chevron* deference).

    Plaintiff does not deny that the *Chevron* deference framework controls this case.  On the

contrary, he concedes that the CIA's interpretation of its own regulation is entitled to deference.

*See* Pl. Opp. at 36-37 ("If the interpretation is reasonable and permissible, it must be upheld

unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

law.").  Instead, he argues that the CIA's interpretation is "unreasonable" and "arbitrary" because

the agency did not submit the interpretation of the term "personal" for formal notice and

comment.  This contention is baseless.

    The CIA was not required to submit its interpretation of the word "personal" for notice

and comment because it was not engaging in rulemaking.  Instead, the CIA was merely engaged

in the process of adjudication – *i.e.*, applying the rules already set out by the controlling

regulations.  The agency addressed for the first time an issue that even plaintiff contends was a

novel one: whether whistleblower complaints are personal documents and, therefore,

inappropriate for classification challenges pursuant to E.O. 12958, as amended.  *See* Compl. ¶ 17

(alleging plaintiff was the first "federal employee to have ever sought to challenge a

classification decision under this provision"); Pl. Opp. at 40 (alleging that "Boening is apparently the first, and so far only, CIA employee to have raised this issue").

The Supreme Court has made clear that the APA does not create a "duty to promulgate regulations that, either by default rule or by specification, address every conceivable question" that could arise in applying that regulation. *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 96 (1995). Instead, it is expected that certain terms will and should be defined through the process of case-by-case adjudication. *See id.* at 96 ("The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication."); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290-295 (1974) (agency may articulate standards through adjudication as well as rulemaking); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (regulations need not further define situations which will be deemed "fair and equitable").

Plaintiff's contrary contention – that the CIA's decision constituted a "rulemaking" because it "removed the ability of authorized holders to challenge the classification status of the information in such [whistleblower] complaints," Pl. Opp. at 37 – is wholly without merit. The APA defines rulemaking as an "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). The CIA did not purport to, and did not, formulate, repeal, or amend anything. Instead, it sought to *apply* a rule already promulgated. The fact that plaintiff and others who draft whistleblower complaints were found to fall outside the scope of the existing rule does not mean that the rule was *altered* to their detriment; it simply means that, in the CIA's reasonable view of its own regulation, that rule was never intended to apply to them.[17]

---

[17] Equally baseless is plaintiff's claim that the CIA's interpretation of its regulation constituted a "change" in longstanding agency interpretations. *See* Pl. Opp. at 39. The CIA *never*

**CONCLUSION**

For the foregoing reasons, this Court should deny plaintiff's motion to compel access and, instead, grant defendant's renewed motion to dismiss and motion for summary judgment.


Dated: <u>January 11, 2007</u>                          Respectfully submitted,

                                                                   JEFFREY S. BUCHOLTZ
                                                                   Acting Assistant Attorney General

                                                                   JEFFERY A. TAYLOR
                                                                   United States Attorney

                                                                   VINCENT M. GARVEY
                                                                   Deputy Branch Director

<u>Of Counsel</u>:                                        <u>*/s/ Michael P. Abate*</u>
Kyle Schurle                                             MICHAEL P. ABATE
Office of the General Counsel                            (IL Bar No. 6285597)
Central Intelligence Agency                              Attorney, Civil Division
Washington, DC  20505                                    U.S. Department of Justice
                                                                   P.O. Box 883
                                                                   20 Massachusetts Ave., N.W., Room 7302
                                                                   Washington, D.C. 20530
                                                                   Telephone: (202) 616-8209
                                                                   Facsimile: (202) 616-8470

                                                                   *Attorneys for Defendant*

---

determined that whistleblower complaints were appropriate for official classification challenges. Instead, the ARP initially proceeded to consider plaintiff's classification challenge because it assumed (based on the document's format and the lack of the required disclaimer) that it was submitted in plaintiff's official capacity. However, once that threshold issue was squarely raised and considered *for the first* time, the CIA determined that whistleblower complaints are personal documents. *See* Koch Decl. ¶ 23.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of January 2008, I caused the foregoing Defendant's Opposition to Plaintiff's Motion to Compel and Renewed Motion to Dismiss and Motion for Summary Judgment to be served on plaintiff's counsel of record electronically by means of the Court's CM/ECF system.

*/s/ Michael P. Abate*

-36-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANZ BOENING                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    Civil Action No.
                                 )    1:07cv00430 (EGS)
                                 )
CENTRAL INTELLIGENCE AGENCY,     )
                                 )
          Defendant.             )
_____ )

DECLARATION OF JOHN L. McPHERSON,
CHIEF, LITIGATION DIVISION, OFFICE OF
GENERAL COUNSEL, CENTRAL INTELLIGENCE AGENCY

I, JOHN L. McPHERSON, hereby declare and say:

1.  I am an Associate General Counsel and the Chief of
the Litigation Division (LD) with the Central Intelligence
Agency's (CIA) Office of General Counsel (OGC).  I have
served in this position since 2004.  Before assuming my
current position I had been the Deputy Chief of LD, and
prior to that I had served in a number of positions in OGC
since joining the CIA in 1991.

2.  In my capacity as Chief, LD, I am responsible for
the oversight of all litigation to which the CIA is a
party, in which CIA information is relevant, or in which
CIA personnel are potential witnesses.

3. Through the exercise of my official duties, I have become familiar with the above-captioned lawsuit. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

4. When the CIA deems it in the interests of the United States, the CIA may grant a limited security approval to a private attorney retained to provide legal services to a current or former CIA employee. Such an approval may be granted, for example, in order to assist the employee in complying with the obligations of the employee's secrecy agreement and federal law to prevent the unauthorized disclosure of classified information.

5. A limited security approval is a security determination that is more restrictive in scope than a security clearance granted to a CIA employee. A limited security approval only grants authorization on a need-to-know basis to an individual for access to specific CIA information at a specific classification level for a specific purpose.[1] If the CIA determines that a private attorney has a need to know specific classified information, the granting of a limited security approval

---

[1] A request for different classified information, a different matter, a different case, or a different client requires a separate request for a new limited security approval.

authorizes only disclosure of the specific information
authorizes by the CIA.  Without further authorization, such
a limited security approval does not authorize an employee
to disclose to a private attorney other classified
information.  Nor does that security approval authorize an
attorney to use that information in connection with any
other proceedings.

6.  I understand that the CIA granted plaintiff's
counsel, Mr. Mark S. Zaid, a limited security approval in
connection with his representation of Mr. Boening in OIG
proceedings arising from Mr. Boening's submission of an
Urgent Concern related to perceived acts of retaliation
(all of which OIG found to be without merit and declined to
pursue further).

7.  I understand that in connection with his
representation of Mr. Boening in those OIG proceedings, OIG
permitted Mr. Zaid to review its final report, which
included two classified paragraphs that related to the
subject of the May 10, 2001 Boening memorandum that is the
subject of this litigation, but did not permit Mr. Zaid to
review that memorandum itself.

8.  By letter dated 15 October 2007, Mr. Zaid
requested that both he and Mr. Boening be granted access to
"the 'classified' documents [Mr. Boening] created that are

3

the subject of this litigation." The letter also stated that Mr. Zaid had "participated in the IG [Inspector General] process wherein these documents were created, reviewed and discussed," during which he had had "unfettered prior authorized access."

9. By letter dated 26 October 2007, the Department of Justice (DOJ) informed Mr. Zaid that the CIA rejected his request based on its determination that neither Mr. Zaid nor Mr. Boening possessed the requisite "need-to-know" that classified information in connection with this litigation. The term "need-to-know" is defined by § 4.1(c) of Executive Order 12958 ("Classified National Security Information," dated April 17, 1995), as a "determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function."

10. The need-to-know determination was based on whether providing Messrs. Zaid and Boening access to the classified information at issue was necessary to permit either of them to perform or assist in a lawful and authorized governmental function. The CIA determined that it was not. The fact that Mr. Zaid represents Mr. Boening in civil litigation against the CIA does not, by itself,

4

qualify as a need-to-know under Executive Order 12958.
Moreover, neither Mr. Zaid nor Mr. Boening are performing a
lawful and authorized governmental function, but rather are
seeking to vindicate through litigation Mr. Boening's
private grievance against the CIA.

     11.  A need-to-know determination made in connection
with an Agency administrative proceeding does not
constitute a need-to-know determination for all other
proceedings related to that information.  Therefore, the
determination that Mr. Boening and Mr. Zaid have no need-
to-know this information in connection with this litigation
is separate from, and not controlled by, any prior need-to-
know determinations made in connection with either the
OIG's administrative process or the separate Publication
Review Board review process at issue in this litigation.

                              *    *    *

     I hereby declare under the penalty of perjury that the
foregoing is true and correct.

     Executed this //$^{TH}$ day of January, 2008.


                              _____
                              John L. McPherson
                              Associate General Counsel
                              Office of General Counsel
                              Central Intelligence Agency


                                   5



**U.S. Department of Justice**
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Room 7302
Washington, DC 20530

---

Michael P. Abate                    Tel: (202) 616-8209 — Fax: (202) 616-8470
Trial Attorney                      Email: michael.abate@usdoj.gov

July 26, 2007

<u>VIA FACSIMILE, FIRST-CLASS MAIL, AND E-MAIL</u>
Mr. Mark S. Zaid
Mark S. Zaid, P.C.
1250 Connecticut Avenue, NW
Suite 200
Washington, DC 20036

Re: *Boening v. Central Intelligence Agency*, Civil Action No. 07-0430 (D.D.C.)

Dear Mark:

On July 20, 2007, the CIA filed a Motion to Dismiss and for Summary Judgment in the above-captioned matter. Although the CIA does not know what, if anything, plaintiff intends to file in response to that Motion, we anticipate that plaintiff may wish to produce materials that he believes demonstrate the classified information contained in the May 10, 2001 Memorandum is based upon overt sources. In the context of this litigation, where plaintiff's Complaint describes his Memorandum as one alleging an improper relationship between the CIA and a specific foreign national, the public filing of even overt sources discussing the name, country of origin, or other identifying details of that individual could risk disclosing properly classified information. Therefore, we would like to offer your client assistance in filing *in camera* any declarations and supporting material that he might wish to submit for the Court's review.

As you are aware, Mr. Boening remains subject to Secrecy Agreement that precludes him from disclosing to any recipient not authorized by the CIA any statements that may touch upon classified information, without first submitting that material for review. That Agreement covers any materials or declarations that he may wish to file on the public record for the Court's review. Given the upcoming deadline for filing plaintiff's opposition to our Motion, we suggest that Mr. Boening himself send any proposed submissions (through classified means) directly to me through the Department of Justice's Security Office. The DOJ's Security Office can then forward these materials to the appropriate government officials to review whether they are classified, or, even if not themselves classified, could reveal classified information if filed on the public record in connection with this litigation. After that review is completed, DOJ will then ensure that Mr. Boening's submissions are filed with the court *in camera*. Any submissions that are not classified and pose no risk of revealing classified information if publicly disclosed in the context of this litigation can be re-filed on the public record. Should this proposal be acceptable to Mr. Boening, he must send any submissions double-wrapped via Federal Express to the following address:

Michael Abate
Federal Programs Branch
c/o Michael Macisso
Supervisory Security Specialist
Litigation Section
Department of Justice
20 Massachusetts Ave.
Room 5300
Washington, D.C. 20001
(202) 514-9016

In the event your client does not wish to accept the Government's offer to assist him in filing *in camera* materials, he must send his proposed submissions to the CIA for pre-publication review at least five business days in advance of the filing deadline. If Mr. Boening elects to proceed in this manner, we can provide you with the contact information for the appropriate CIA official.

In light of the upcoming filing deadline, we would appreciate hearing back from you regarding our proposal as soon as possible. I attempted to contact you by phone earlier this week to discuss this matter, but was unable to reach you. Thus, I am following up on that call with this letter.

Finally, as we noted in our Motion last week, the CIA has determined that Mr. Boening may release his January 16, 2003 Employment Grievance in full. A copy of the Publications Review Board's authorization to publish that document will follow under separate cover.

Sincerely,

Michael P. Abate
Trial Attorney
United States Department of Justice

cc: Michael Macisso

**Subject:** PRB Approval of Manuscript -- Franz Boening
**From:** ███████@ucia.gov
**Date:** Thu, 15 Nov 2007 10:29:53 -0500
**To:** Franz Boening <████████████>
**CC:** Publications Review Board <prb@ucia.gov>

Dear Mr. Boening:

The Publications Review Board completed its review of your
manuscript entitled "What the Spys Need to Learn."  The Board has no
objection to its
publication.

The Board appreciates your cooperation with prepublication review.
Please contact the Publications Review Board at 703-613-3070 if you
have
any questions or if we can be of further assistance.

Sincerely,

Dave/PRB Staff