# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRANZ BOENING, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CENTRAL INTELLIGENCE AGENCY, )<br>)<br>    Defendant. )<br>) | Civil Action No. 07-0430 (EGS) |

## DEFENDANT'S (1) REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:
Debra A. Wolf
Office of the General Counsel
Central Intelligence Agency
Washington, DC 20505

MICHAEL P. ABATE
Attorney, Civil Division
U.S. Department of Justice
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Defendant, and Not Plaintiff, Is Entitled To Summary
      Judgment on Boening's First Amendment Claim Because
      Plaintiff Failed to Discharge His Well-Established Burden of
      Pinpointing the Specific Portions of Overt Sources That
      He Asserts Support the Classified Information in His Memorandum. . . . . . . . . . 3

      A.    Plaintiff Bears the Burden of Pinpointing the
            Purportedly Overt Sources for the Classified Material
            in His Memorandum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Plaintiff, Who Refuses to Provide the CIA or this Court
            with Pinpoint Citations to His Purportedly Overt Sources,
            Has Not Discharged This Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.    The CIA Did Not Violate the First Amendment by Requiring
            a Disclaimer or Insisting that Plaintiff Remove the Memorandum
            from a Format Suggesting it Was An Official CIA, Rather than
            Personal, Document. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    The CIA Did Not Classify Plaintiff's Memorandum for
             Improper Purposes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      E.    The CIA Did Not Classify Public Sources . . . . . . . . . . . . . . . . . . . . . . 13

II.   Plaintiff's APA Claims Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    This Court Lacks Jurisdiction over the Two APA Claims
             in Plaintiff's Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.    Plaintiff's Two Additional APA Claims, Neither of Which
            Appear in His Complaint, Are Not Properly Before this Court
            and Lack Merit in Any Event. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

Afshar v. Dep't of State, 702 F.2d 1125 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . .  4, 5, 11

Alliance for Democracy v. Federal Election Comm'n,
    335 F. Supp. 2d 39 (D.D.C. 2004)I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Angeles v. Lyons, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service,
    297 F. Supp. 2d 165 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18
    (D.D.C. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Harbury v. Hayden, 444 F. Supp. 2d 19 (D.D.C. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . 19

Krieger v. Fadely, 211 F.3d 134 (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 11

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . 4

NLRB v. Wyman-Gordon Co., 394 U.S. 759 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Stillman v. CIA, 319 F.3d 546 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Stillman v. CIA, 517 F. Supp. 2d 32 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . .  15, 17, 19

Wolf v. CIA, 473 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

# INTRODUCTION

In opposing Plaintiff's Motion to Compel Access (Dkt. no 11) to the classified documents filed in support of defendant's initial Motion to Dismiss and Motion For Summary Judgment ("Initial Motion") (Dkt. no. 4), defendant argued that *Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003) requires this Court to first consider whether it can, without assistance of opposing counsel, determine if plaintiff's May 10, 2001 memorandum ("Memorandum") is properly classified; only if it cannot make such a determination should the Court address the merits of plaintiff's access motion. *See Stillman*, 319 F.3d at 548; Defendant's Renewed Motion to Dismiss and Motion For Summary Judgment ("Renewed Motion") (Dkt. no. 18) at 1-6. Therefore, defendant respectfully renewed its Initial Motion to Dismiss and for Summary Judgment. And, in an attempt to further this already-protracted litigation, defendant responded directly to the arguments that plaintiff raised in his original opposition to the CIA's dispositive motion ("Original Opposition") (Dkt. no. 9).[1]

Plaintiff's opposition to the Renewed Motion ("Opposition to Renewed Motion") (Dkt. no. 25), by contrast, does little more than repeat – often verbatim – the arguments he advanced in

---

[1] Defendant's Renewed Motion renewed its Initial Motion and supporting exhibits (including the *in camera*, *ex parte* declaration of Ralph S. DiMaio). *See* Renewed Motion at 2. Therefore, plaintiff's repeated claims that the CIA somehow abandoned arguments contained in that Initial Motion are without merit. *See, e.g.*, Opposition to Renewed Motion at 23 (incorrectly claiming the CIA abandoned argument that the information in the Memorandum is properly classified under E.O. 12958, as amended); *id.* at 24 (incorrectly claiming that the CIA abandoned the well-established argument that courts must defer to the Executive Branch's assessment of the harms that would flow from the disclosure of classified information). Indeed, such claims ring hollow because plaintiff himself unsuccessfully asked this Court to strike the Renewed Motion on the basis that, when taken together with the Initial Motion, it exceeded the page limits set by local rules. *See* Motion to Strike at 2 (Dkt. no. 23) (unsuccessfully arguing that because defendant "incorporat[ed] . . . legal arguments originally espoused" in the Initial Motion to Dismiss, it violated LcvR 7(e)).

his Original Opposition.  As a result, plaintiff ignores many of the arguments that defendant

included in the Renewed Motion to respond to plaintiff's Original Opposition.  And, in the rare

instances where plaintiff did attempt to respond to the Renewed Motion, he advances arguments

that either are inapposite and/or contradicted by the record in this case and by controlling CIA

regulations.  Put simply, nothing in plaintiff's opposition provides grounds for denying the

Renewed Motion.

At bottom, this is a case about whether plaintiff's Memorandum is properly classified.

Plaintiff continues to maintain that he is entitled to publish that Memorandum as it is presently

written.  This argument fails as a matter of law.  As explained in declarations submitted by CIA

classification officials, the information redacted from plaintiff's Memorandum is properly

classified.  *See generally* Public Declaration of Ralph S. DiMaio ("Unclassified DiMaio Decl.");

Classified *in camera*, *ex parte* Declaration of Ralph S. DiMaio ("Classified DiMaio Decl.").

Plaintiff does not squarely challenge that determination.  Instead, he argues that the information

contained in the Memorandum is not the CIA's information but, instead, is separate information

derived solely from overt sources, such as books and newspaper articles.

The flaw in this argument is that plaintiff cannot maintain that he relied only upon public

information unless and until he identifies for the CIA and this Court those public sources.  Yet

plaintiff steadfastly refused – and continues to refuse – to pinpoint specific portions of overt

source material that purportedly contain the classified information appearing in his

Memorandum.  Because he has not met this minimal, and well-established, legal burden,

plaintiff's First Amendment claim must fail.

Plaintiff's other claims fare no better.  He has lodged two distinct claims under the

Administrative Procedures Act ("APA") concerning the CIA's review of his Memorandum. The first alleges that the CIA violated the law by failing to process his submission within thirty (30) days. The second alleges that the CIA incorrectly concluded that he was not an "authorized holder" of the information contained in his Memorandum. Both of these claims must be dismissed, because the Court lacks jurisdiction to consider them; the first is moot, and plaintiff lacks standing to pursue the second.

For all of these reasons, spelled out in greater detail below, the CIA's Renewed Motion to Dismiss and Motion for Summary Judgment should be granted, and plaintiff's Cross-Motion for Summary Judgment (Dkt. no. 26) should be denied.

## I. Defendant, and Not Plaintiff, Is Entitled To Summary Judgment on Boening's First Amendment Claim Because Plaintiff Failed to Discharge His Well-Established Burden of Pinpointing the Specific Portions of Overt Sources That He Asserts Support the Classified Information in His Memorandum

### A. Plaintiff Bears the Burden of Pinpointing the Purportedly Overt Sources for the Classified Material in His Memorandum

Plaintiff's Original Opposition clarified the narrow scope of the parties' dispute on his First Amendment claim. Plaintiff does not squarely challenge the CIA's assertion that the subject of his Memorandum is classified. Instead, plaintiff alleges that the information in his Memorandum is not the CIA's information but, rather, is information derived solely from public sources. *See, e.g.*, Opposition to Renewed Motion at 16, 27.[2] Indeed, plaintiff explicitly denies

---

[2] Plaintiff goes so far as to state that "the CIA cannot honestly dispute that every withheld fact from within the 'M Complaint' was derived from published newspaper and magazine articles, or declassified documents of other government agencies that were retrieved from the Internet." Opposition to Renewed Motion at 16. The CIA *can and does* dispute this claim. The record in this case reveals: (1) that the information in the Memorandum is properly classified under E.O. 12958, as amended, *see generally* Classified DiMaio Decl.; and (2) that plaintiff has consistently refused to pinpoint for the CIA the portions of his purportedly overt sources discussing the exact classified

that he ever had access to any classified CIA information on this subject. *See id.* at 27 (alleging that plaintiff "cannot only prove he gathered the information exclusively outside of his employment at CIA and solely from open source materials, but further that at no time did he even have authorized access to the information while employed at the CIA").

In light of this argument, the entire classification challenge at this point turns on a discrete inquiry: has plaintiff demonstrated that he obtained the classified information in his Memorandum from an overt source rather than from information that plaintiff may have had access to – either authorized or not – by virtue of his employment at the CIA? The law is clear that where, as here, a plaintiff brings a First Amendment challenge alleging that information may not be classified because it is derived from public sources, he, rather than the government agency, bears the initial burden of identifying the purported sources for that specific information. *See* Renewed Motion at 9-10. *See also, e.g.*, *McGehee v. Casey*, 718 F.2d 1137, 1141 n.9 (D.C. Cir. 1983) ("An ex-agent should demonstrate . . . at an appropriate time during the prepublication review, that such information is in the public domain."); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (""[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of *pointing to specific information* in the public domain that appears to duplicate that being withheld.") (citing *Military Audit Project v. Casey*, 656 F.2d 724, 741-45 (D.C. Cir. 1981)).[3]

_____

information in his Memorandum. Unless and until plaintiff makes such a showing, as the law requires him to do, the CIA cannot credit his statement that the classified information was derived from sources outside the Agency.

[3] Plaintiff incorrectly argues that several of the precedents on which defendant relies are inapposite because they arose in the FOIA context. *See, e.g.*, Opposition to Renewed Motion at 19, 21, 23-24, 38 & nn.20, 23, 28. This is not so. Those cases are *directly* on point because they

The reason for this requirement is clear.  When determining whether classified information has been officially released, classification experts – and courts – must undertake a nuanced multi-part analysis that considers whether the information deemed classified is in fact identical to that which has been officially disclosed or released into the public domain. *See, e.g.*, *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (information alleged to have entered the public domain must: (1) be as specific as the information previously released; (2) the disputed information must exactly match the information publicly disclosed, *e.g.*, it must involve the same time period or same operation; and (3) the information sought to be released must already have been publicly released through "an official and documented disclosure" (citing *Afshar*, 702 F.2d at 1133).  Thus, it is not simply enough that there be some – or even a lot – of public discussion about a subject.  *See, e.g., Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("An agency's official acknowledgment of information by prior disclosure . . . cannot be based on mere public speculation, no matter how widespread." (citing *Afshar*, 702 F.2d at 1130)).  For information to lose its protection as properly classified, that exact information, and in that exact context, must have been placed in the public domain.  Thus, as the CIA did here, agencies and courts may rightly insist that private parties who wish to publish information deemed classified must at least identify specific passages of open source materials on which they claim to rely.

---

concern the same issue that governs this case – whether the information in question is properly classified.  To be sure, different consequences flow from a determination that information is classified in a FOIA case (where the government need not disclose the information) and in a First Amendment context (where a private party, bound by a secrecy agreement, cannot publish the information).  But that fact in no way renders those cases' analysis of the threshold *classification* issue inapposite.

**B.**     **Plaintiff, Who Refuses to Provide the CIA or this Court with Pinpoint Citations to His Purportedly Overt Sources, Has Not Discharged This Burden**

Plaintiff does not seriously – and cannot – dispute that he bears this burden of identifying his purportedly overt sources.  Instead, he offers a litany of arguments concerning the appropriate level of detail that he must provide.  He also contends that he *has* discharged this burden.  None of these arguments is persuasive.

First, plaintiff argues that the CIA never informed him that he needed to do more to pinpoint the source of his classified information.  Specifically, he complains that the CIA "never before requested the level of specificity it now seeks to impose" and that "at no time[] had the PRB ever requested that Boening specifically identify any text with a 'pinpoint citation.'" Opposition to Renewed Motion at 20.  This assertion is wrong.  The record in this case clearly demonstrates that the CIA *repeatedly* asked plaintiff to revise his Memorandum to include specific citations for each of the facts deemed classified.  In a January 5, 2006 e-mail, the Chairman of the Publications Review Board ("PRB notified plaintiff that:

> [T]he Publications Review Board requires that you rewrite your 'M Documents' outside of a government memo format stating in your own words what you desire to communicate.  *As mentioned in our previous messages, what you resubmit must include specific, open source citations (author, title, source, date, page) for the statements you wish to make.  These citations must be placed into the body of the text linked to specific sentences and paragraphs.*

*See* Declaration of Scott A. Koch ("Koch Decl.") ¶ 34 (Dkt. no. 4-4) & Exh. E (Dkt. no. 4-7) (emphasis added).  After plaintiff refused to make the alterations – which were required to demonstrate that his Memorandum was derived from overt, rather than classified, sources – the PRB issued its final decision denying him permission to publish the Memorandum.  On August

11, 2006, the PRB notified plaintiff of its decision to refuse him permission to publish the

Memorandum as written.  Nevertheless, the PRB once again invited plaintiff to revise and

resubmit the document with the required pinpoint citations.  It stated:

> If you undertake to rewrite these documents or otherwise state in your own words
> what you desire to communicate, you are required to submit this new material for
> prepublication review.  *What you resubmit must include specific, open source
> citations (author, title, source, date, page) for the statements you wish to make.
> These citations must be placed in the body of the text and be linked to specific
> sentences or paragraphs.*

*See* Koch Decl. ¶ 38 & Exh. H (Dkt. no. 4-7) (emphasis added).  Contrary to plaintiff's factual

claim, this letter (like the January 2006 PRB communication) clearly "requested that Boening

specifically identify . . . text with a 'pinpoint citation.'"  Opposition to Renewed Motion at 20.

Second, plaintiff advances the equally specious contention that the CIA told him he had

met this burden *already*.  This claim, too, is belied by the record.[4]  To support this claim, plaintiff

relies exclusively on a June 30, 2006 e-mail from the then-PRB Chairman.  He argues that this e-

mail proves he "basically provided sufficient sourcing."  *See* Opposition to Renewed Motion at

20 (citing Koch Decl. Exh. G (Dkt. no. 4-7)).  Not so.  While, to be sure, that e-mail did

acknowledge that plaintiff *attempted* to provide open source citations for some material in the

Memorandum, that message in no way stated that the Memorandum was adequately sourced

throughout; instead, it encouraged plaintiff to expand upon his minimal (but obviously

inadequate) citation efforts.  But even if the e-mail had implied plaintiff's citation efforts were

sufficient, that would be of no moment.  That e-mail clearly *did not* grant plaintiff permission to

---

[4] In addition to being in conflict with the record, these first two claims are also in substantial
conflict with one another.  Plaintiff attempts to have it both ways by claiming, on one hand, that no
one told him he *needed to* provide specific citations to open source material while maintaining, on
the other, that the CIA told him he *already* had provided the required citations.

publish his Memorandum as written, and it was followed shortly by the August 11, 2006 letter

from the PRB that specifically requested he revise his Memorandum to include pinpoint

citations.  That letter, which conveyed the PRB's decision to deny permission to publish the

Memorandum, superceded any e-mail communication prior to that date.  Hence, plaintiff could

not claim then – and certainly cannot claim now – reliance on the CIA's supposed determination

that he had "basically provided sufficient sourcing." Opposition to Renewed Motion at 20.

Third, plaintiff advances a flawed legal contention; he argues that the PRB's regulations

do not require him to provide pinpoint citations for classified material in his Memorandum.  *See*

Opposition to Renewed Motion at 19-20.  Curiously, he relies upon the text of regulations that

directly undermine this argument.  The PRB Regulation language that appears in plaintiff's own

brief clearly contemplates that the PRB may request that an author provide specific, pinpoint,

overt-source citations for otherwise classified material.  As plaintiff notes, the 1995 Regulation

(in effect at the time he submitted his Memorandum) states:

> When an author claims that information intended for nonofficial publication is
> unclassified because it has already appeared in public, the author may be called upon
> *to identify any open sources for information that, in the Agency's judgment,*
> *originates from classified sources*.  Failure or refusal to identify such public sources
> or otherwise cooperate may result in refusal of authorization to publish the
> information in question.  *The author may also be requested to cite the source in a*
> *footnote.*

1995 PRB Regulation § 2(c)(5), attached as Exh. B to the Koch Decl. (Dkt. no. 4-5) (emphasis

added).  Similarly, the 2005 Regulation, also (curiously) relied upon by plaintiff, notes that:

> When otherwise classified information is also available independently in open
> sources and can be cited by the author, the PRB will consider that fact in making its
> determination on whether that information may be published *with the appropriate*
> *citations*. Nevertheless, the Agency reserves the right to disallow certain open-source
> information or citations where, because of the author's Agency affiliation or position,

-8-

the reference might confirm the classified content.

2005 PRB Regulation § 2(f)(4), attached as Exh. C to Koch Decl. (Dkt. no. 4-5) (emphasis

added).  Both of these regulations clearly permit the CIA to request that plaintiff provide citations

to his purportedly open sources, and provide that the failure to provide such citations may

constitute grounds for denying permission to publish a submission.  Plaintiff's claims to the

contrary are therefore without merit.

Put simply, plaintiff cannot contest that the PRB's regulations permit it to request that he

provide pinpoint, overt source citations for the classified information that appears in his

Memorandum, or that the CIA did repeatedly request such citations.  His only hope, then, is to

convince this Court that he *did provide* adequate citations.  This he cannot do.  As explained at

length in the Renewed Motion, plaintiff's Memorandum lacks even a *single citation* sufficient to

identify the purportedly overt sources for the classified information contained therein.  *See*

Renewed Motion at 11 (noting that pages 1-8, 22-23, and the two "annexes" attached to the

Memorandum are completely devoid of any citations; that pages 9-21, which were redacted in

their entirety because of the volume of classified information contained therein, do not contain a

single adequate pinpoint citation; and that the "bibliography" lists nothing more than the names

of publications, without identifying information about the authors, dates, or page numbers of

specific articles); *see also* Koch Decl. ¶ 36 ("[Plaintiff] still had not, however, and has not to

date, revised his memorandum to include the specific open source citations linked to each

sentence and each paragraph as required by the CIA.").  Therefore, plaintiff has utterly failed to

discharge his burden of identifying his purportedly open sources, and his First Amendment claim

should fail as a matter of law.[5]

Finally, and in an attempt to avoid altogether the CIA's regulation requiring him to pinpoint the purportedly overt sources of his information, plaintiff contends that it was sufficient for him to merely provide to the PRB a stack of documents purporting to be his overt source material. *See* Opposition to Renewed Motion at 20; Second Boening Declaration ¶ 20 (Dkt. no. 25-2). The problem with this approach, of course, is that it violates the very purpose of the rule requiring plaintiffs to pinpoint their purportedly overt sources for classified information. As noted *supra*, without a roadmap explaining how specific portions of those public sources match up *exactly* with each of the pieces of classified information in the Memorandum (a large number, in this case), neither the PRB nor this Court can undertake a meaningful analysis of whether that information is, in fact, in the public domain. And, as noted in the Renewed Motion, employing this approach at this stage in the litigation would transfer *onto the Court* the burden of acting as plaintiff's fact-checker. *See* Renewed Motion at 12-13. Plaintiff ignores the fact that his actions would impose an undue and improper burden upon the Court. Whether this Court *could* undertake such an analysis is not the point; instead, the key question is whether the Court *should* be made to bear plaintiff's burden by performing a task that plaintiff himself is unwilling to do. It should not. If plaintiff wishes to argue that he only relied on overt sources, then he must, at a minimum, identify the specific portions of his large volume of public source materials that

---

[5] It goes without saying that the Memorandum speaks for itself in terms of whether it contains adequate citations. Because this Court plainly can see – without any assistance from any party – that the unredacted Memorandum simply lacks *any* sufficient citations identifying the supposedly overt sources for the material deemed classified, plaintiff should not be permitted to use his own failure to provide such citations as a reason to grant his other, separate motion to obtain access for himself and his attorney to that Memorandum, as well as the CIA's classified *in camera*, *ex parte* declaration. Yet this is exactly what plaintiff attempts to do. *See* Opposition to Renewed Motion at 20 n.21.

allegedly match the exact information, time frame, and context of the classified assertions in his Memorandum. S*ee McGehee*, 718 F.2d at 1141 n.9; *Afshar*, 702 F.2d at 1130. Because he refuses to do so, plaintiff's motion for summary judgment should be denied, and defendant's granted.[6]

C.    **The CIA Did Not Violate the First Amendment by Requiring a Disclaimer or Insisting that Plaintiff Remove the Memorandum from a Format Suggesting it Was An Official CIA, Rather than Personal, Document**

Plaintiff also continues to challenge the PRB's determinations that he must revise his Memorandum to (1) include the disclaimer stating that the views expressed in his Memorandum are his own and not the Agency's, as required by the PRB regulations; and (2) remove the Memorandum from its official government-memorandum format. These arguments, which largely rehash the contentions made in his Original Opposition, lack merit for reasons discussed at greater length in the Renewed Motion.

Against the disclaimer requirement, plaintiff advances arguments essentially identical to those he made in his Original Opposition. *Compare* Original Opposition at 30-33, *with* Opposition to Renewed Motion at 32-37.[7] This is true notwithstanding the fact that the CIA

---

[6] As noted in the Renewed Motion, the CIA remains willing to work with plaintiff to create an unclassified version of his Memorandum that appropriately sources all of the classified information contained therein. To restart that process plaintiff need only submit a revised version of the Memorandum to the PRB. *See* Renewed Motion at 2 n.1, 8-9.

[7] These arguments are different in only one meaningful aspect: plaintiff seems to have abandoned his meritless contention that the CIA regulations did not require him to include such a disclaimer. *See* Original Opposition at 31 & n.27. Defendant explained how the regulations required plaintiff to include this disclaimer language at all relevant times. *See* Renewed Motion at 16-17. To compensate for the deletion of this argument, plaintiff now places more weight upon the argument (made previously only in passing) that the CIA was not permitted to require this disclaimer because it is nowhere mentioned in his secrecy agreement. *See* Opposition to Renewed Motion at 33 & n.38. But, as noted in the Renewed Motion, this argument must fail because in signing that

responded to those arguments in detail in its Renewed Motion.  Defendant respectfully refers this

Court to its prior brief for a detailed explanation of why these arguments fail.  *See* Renewed

Motion at 14-17.

Nor does plaintiff advance any new arguments concerning the related requirement that he

remove the Memorandum from its official-looking format.  He continues to rely on the fact that

the CIA permitted him to release other memoranda, which did not contain classified information,

in similar formats.  *See* Opposition to Renewed Motion at 38.  He does not meaningfully grapple

with the CIA's argument that it has a heightened interest in preventing the release of official-

looking documents that do contain classified information, which might wrongfully be construed

as official Agency statements.  *See* Renewed Motion at 14-15.[8]

### D.    The CIA Did Not Classify Plaintiff's Memorandum for Improper Purposes

Plaintiff again recycles his argument that the CIA improperly attempted to classify the

information in his Memorandum to avoid embarrassment.  *See* Opposition to Renewed Motion at

25.  As support for this proposition, plaintiff relies on a hearsay statement allegedly made to him

---

secrecy agreement plaintiff consented to submit all personal writings to the PRB for prepublication
review.  *See* Renewed Motion at 16.  Thus, he cannot now complain that he is being asked to follow
the rules for such prepublication review solely on the grounds that those detailed rules are not spelled
out in the secrecy agreement itself.  Surely plaintiff does not contend that the CIA should be required
to codify all applicable agency regulations (including PRB rules) in an employee's secrecy
agreement, and forever after be powerless to amend those regulations; yet that is exactly the
consequence of this argument.

[8] In fact, plaintiff appears to confuse the government's arguments.  In an attempt to address
the argument that the Memorandum's *format* represents an inappropriate attempt by plaintiff to cloak
his personal views in the Agency's mantle, plaintiff attacks the cases that the CIA cited in support
of the *disclaimer requirement*.  *See* Opposition to Renewed Motion at 38.  And, as noted above, this
attack suffers from the same flaw that dooms many of plaintiff's arguments; it attempts to distinguish
relevant precedents solely on the ground that they arose in the FOIA context without any meaningful
analysis of why the *principles* that those cases stand for are not relevant.  *See supra* n.3.

by a former Agency official. *See id.* Plaintiff even alleges that this statement is sufficient to create a material issue of fact that defeats summary judgment. *Id.* Not so. The record demonstrates that the CIA did not classify the material in order to avoid embarrassment but, rather, because it fell within the categories of information properly classifiable under §§ 1.4(b)-(d) of E.O. 12958, as amended. *See* Renewed Motion at 17-19; Unclassified DiMaio Decl. ¶ 14; *see also generally* Classified DiMaio Decl. It is those sworn declarations by the Agency's classification officials, rather than plaintiff's unsubstantiated allegations concerning personal bias, that set forth the basis of the document's classification. Mere allegations to the contrary are not sufficient to overcome the presumption of good faith that attaches thereto. *See* Renewed Motion at 17-18 (collecting authorities).

>    **E.**    **The CIA Did Not Classify Public Sources**

Finally, it must be noted that plaintiff is simply incorrect when he repeatedly alleges that the CIA has "classified" purported overt source materials that he again attempted to submit on the public record. *See, e.g.*, Opposition to Renewed Motion at 16-17, 27 & n.18. The CIA has done no such thing. As noted in the Renewed Motion, the CIA asked plaintiff not to file the purported sources on the public record because their contents, in connection with information that plaintiff has *already disclosed* on the public record, could risk revealing properly-classified information. *See* Renewed Motion at 5 n.4 ("In reviewing these materials, the CIA requested that plaintiff not file them publicly because, in connection with certain allegations in the Complaint, they risked revealing properly classified information. Plaintiff consented to the CIA's request and deleted those materials prior to filing.").

The CIA did not attempt to prevent plaintiff from making these materials available to the

Court.  On the contrary, defendant specifically offered to assist plaintiff in making any *in camera* filings that he may choose to make in connection with this litigation.  *See* Letter from Michael P. Abate, Trial Attorney, U.S. Department of Justice to Mark S. Zaid, Counsel for Plaintiff (July 26, 2007) (Dkt. no. 17-3).  Both in his Original Opposition, and again in his Opposition to the Renewed Motion, plaintiff refused to avail himself of this option and, instead, attempted to publicly file materials that could reveal properly-classified information (when viewed in connection with his other pleadings).  To construe the CIA's reasonable request as an attempt to "classify" public sources is simply incorrect.

## II.    Plaintiff's APA Claims Should Be Dismissed

### A.    This Court Lacks Jurisdiction over the Two APA Claims in Plaintiff's Complaint

Plaintiff's Complaint contains two counts alleging violations of the APA.  First, plaintiff claims that the CIA violated the APA by failing to process his submission within 30 days.  *See, e.g.*, Compl. ¶¶ 30-34.  Second, plaintiff alleges that the CIA acted arbitrarily and capriciously when it determined that plaintiff was not an "authorized holder" of the information whose classification he wished to challenge under E.O. 12958, as amended.  *Id.* ¶¶ 39-44.  For the reasons set forth both in the Initial and Renewed Motions to dismiss, this Court lacks jurisdiction to consider these claims.  *See* Initial Motion at 16-26; Renewed Motion at 21-30.

#### 1.    *Plaintiff's First APA Claim (Failure to Adjudicate Within 30 Days) Is Moot*

The Court lacks jurisdiction over the first APA claim because it is moot.  *See* Initial Motion at16-19; Renewed Motion at 21-23.  This Court reached that very conclusion in identical circumstances in *Stillman*, where it found that "[plaintiff]'s APA claim is moot because there is

-14-

no further relief that this Court can provide as to that claim. [Plaintiff] has already received the final classification decision that he sought from the defendant agencies." *Stillman v. CIA*, 517 F. Supp. 2d 32, 36 (D.D.C. 2007) (dismissing APA claim for lack of jurisdiction).

Plaintiff's primary retort is to argue that this case falls within the narrow category of cases for which courts make exceptions to Article III's standing requirements because the case is "capable of repetition yet evading review." *See* Renewed Opposition at 50-51.[9]  But that attempt must fail, because plaintiff has not established that he will likely suffer that same alleged harm in the future, as the law requires him to do. *See Alliance for Democracy v. Federal Election Comm'n*, 335 F. Supp. 2d 39, 44 (D.D.C. 2004) (Sullivan, J.) (Noting that "capable of repetition" exception applies "only in exceptional situations, and generally only where the named *plaintiffs can make a reasonable showing that [he or she] will again be subjected to the alleged illegality*." (emphasis added) (quoting *Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

In his oppositions to the CIA's motions, plaintiff attempts to meet this standard by expressing an inchoate intent to submit future writings for prepublication review. *See, e.g.*, Second Boening Decl. ¶ 29.  And Boening again points to the submission of a document to the PRB in November 2007 as evidence that he will suffer this alleged harm. *Id.*  But – as plaintiff now concedes[10] – that document was reviewed and cleared in a matter of days, and therefore in

_____

[9] As he did in his opposition to the Initial Motion, plaintiff also continues to argue that the Agency Release Panel's ("ARP") refusal to hear his appeal from his failed classification challenge somehow gives him standing to challenge the amount of time that *the PRB* – a completely separate entity – took to complete its review of his submission. *See* Opposition to Renewed Motion at 50. The CIA explained why that argument is incorrect and entirely irrelevant. *See* Renewed Motion at 22 & n.13.

[10] In his Original Opposition, plaintiff argued that the submission of this document to the PRB demonstrated a sufficient likelihood that he would experience a delay of more than 30 days in

-15-

no way justifies making an exception to Article III's rigid standing requirements.

Just as in *Stillman*, this claim is moot, and the Court therefore lacks jurisdiction to adjudicate it. But even if this claim were not moot, it would lack merit for the reasons explained in the Initial and Renewed Motions – namely, that the 30-day requirement is merely an aspirational goal and therefore cannot create any judicially-enforceable rights. *See* Initial Motion at 18-19; Renewed Motion at 21 & n.12.

> ### 2.    *Plaintiff Lacks Standing to Bring His Second APA Claim (Authorized Holder)*

Plaintiff's second APA claim – which contends that the CIA wrongfully determined he could not bring an "official" challenge to his Memorandum's classification status under E.O. 12958, as amended, because he was not an "authorized holder" of the information contained therein – fails because he has no standing to bring it. *See* Initial Motion at 19-23; Renewed Motion at 23-27.

Plaintiff simply cannot prove that the CIA's determination that he was not an authorized holder of the classified information in his Memorandum caused him to suffer the alleged injury (*i.e.*, not being able to bring an official classification challenge). The CIA's determination that plaintiff is not an "authorized holder" of the information – which was correct, in any event, *see* Initial Motion at 22-23; Renewed Motion at 25-27 – was *not* the sole reason that he was unable to bring an official classification challenge. Being an authorized holder is merely a necessary,

---

obtaining review of his personal writings, and in turn argued that the "capable of repetition" exception therefore applied to this claim. The CIA pointed out in its Renewed Motion that this argument was inappropriate because plaintiff *already had obtained* approval to publish that writing before he filed his motion and declaration. *See* Renewed Motion at 22-23. Without conceding the legal error, plaintiff now admits, as a factual matter, that the document had been approved for publication prior to the filing of his prior briefing. *See* Second Boening Decl. ¶ 29.

and not a sufficient, condition precedent for lodging such a challenge. *See* Initial Motion at 19-20; Renewed Motion at 28-29. Plaintiff must also submit the document in his official, rather than personal capacity, which plaintiff did not do. *See* Renewed Motion at 32-34 (discussing why whistleblower complaints are personal documents that must be submitted to the PRB, rather than official documents whose classification may be reviewed by the ARP).

Moreover, even if plaintiff were *both* an authorized holder *and* pursuing a challenge in his official capacity, he would *still* lack standing to seek relief from this Court because this APA claim would not be redressable. *See* Initial Motion at 21-22; Renewed Motion at 24-25. Plaintiff is calling upon this Court to make the very determination that he claims the ARP wrongly denied him: a decision about whether his Memorandum is properly classified. Once this Court passes upon that question, a remand to the Agency to consider the exact same issue would be an utterly hollow gesture that this Court need not order. *See, e.g.*, *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) ("To remand would be an idle and useless formality . . . . There is not the slightest uncertainty as to the outcome of a proceeding before the Board . . . . It would be meaningless to remand."). The Court should, therefore, dismiss this claim.

**B.      Plaintiff's Two Additional APA Claims, Neither of Which Appear in His Complaint, Are Not Properly Before this Court and Lack Merit in Any Event**

In addition – and as he did in his Original Opposition – Plaintiff attempts to press two new APA claims that were not contained anywhere in his Complaint. Specifically, he attempts to allege that (1) the CIA's determination that he submitted his Memorandum in his "personal capacity" was arbitrary and capricious (and therefore violated the APA); and (2) that the CIA was required to undertake notice and comment before concluding that whistleblower complaints

constitute personal documents that must be reviewed by the PRB, rather than official documents that must be reviewed by the ARP. *See* Opposition to Renewed Motion at 40-45; *see also* Opposition to Initial Motion at 34-40. These contentions appear *nowhere* in the Complaint, *see* Renewed Motion at 29, and thus cannot be added to the case merely by inclusion in plaintiff's Opposition and/or Cross-Motion. *See, e.g.*, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).

Plaintiff does not even attempt to explain how his Complaint fairly encompasses these new allegations of procedural and substantive harms. Instead, and in an attempt to divert the Court's attention from the fact that it does not, plaintiff alleges that *the CIA* put these new claims at issue when it challenged his standing to bring the other, distinct APA claims that are in his Complaint. *See* Opposition to Renewed Motion at 39 ("The CIA brought this issue to the Court when it challenged Boening's standing."). And, in a final attempt to salvage these new claims, he notes that "complaints do not have to 'plead law or match facts to every element of a legal theory.'" *Id.* at 39-40 (quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)).

These arguments lack merit. The law plainly requires that plaintiff provide the agency with fair notice of the claims against it. *See, e.g.*, *Harbury v. Hayden*, 444 F. Supp. 2d 19, 39-40 (D.D.C. 2006) ("Plaintiff has never sought to amend her Second Amended Complaint to include a claim based on a violation of the TVPA . . . . As such, it is clear that Defendant, or the individually-named former federal defendants, never had any explicit notice that Plaintiff was asserting an independent TVPA-based claim."). Plaintiff cannot seriously contend that by

-18-

arguing the CIA took more than 30 days to process his submission, and that (in his view) it incorrectly concluded he was not an authorized holder of the information in his Memorandum, that he *also* put the Agency on notice of allegations that it violated the law by making a separate determination – nowhere attacked in the Complaint[11] – that the Memorandum was submitted in his personal capacity, or that the CIA was required to undertake a period of notice and comment before reaching that conclusion.

Finally, for reasons discussed at length in the Renewed Motion, these two new claims lack merit in any event. The CIA's determination that whistleblower complaints constitute personal, rather than official, documents represents the better reading of the controlling statutes and regulations, is entitled to deference, and required no period for notice and comment. *See* Renewed Motion at 30-34. And it must be noted – yet again – that this determination did not prevent plaintiff from attempting to publish his Memorandum; it simply directed that plaintiff should work with the PRB to obtain publication of that material. *Id.* at 32.[12]

## CONCLUSION

For all of the foregoing reasons, defendant's motion (1) to dismiss plaintiff's APA claims, and (2) for summary judgment on plaintiff's First Amendment claim, should be granted, and plaintiff's Cross-Motion for Summary Judgment should be denied.

––––––––––––––––––––

[11] The Complaint only once mentions the CIA's determination that the document was submitted in a personal capacity, *see* Compl. ¶ 19, and even then it was mentioned favorably and in support of a wholly different claim pressed by plaintiff. *See* Renewed Motion at 29.

[12] Plaintiff's Opposition to the Renewed Motion attempts to incorporate the separate arguments contained in his Motion to Compel Access. *See* Opposition to Renewed Motion at 54-55. Those arguments, and that separate motion, should be rejected for the reasons stated in defendant's opposition thereto. *See* Dkt. no. 17 (filed Jan. 11, 2008).

Dated: <u>March 21, 2008</u>                                        Respectfully submitted,

                                                                   JEFFREY S. BUCHOLTZ
                                                                   Acting Assistant Attorney General

                                                                   JEFFERY A. TAYLOR
                                                                   United States Attorney

                                                                   VINCENT M. GARVEY
                                                                   Deputy Branch Director

<u>Of Counsel:</u>                                                 ***/s/ Michael P. Abate***
Debra A. Wolf                                                      MICHAEL P. ABATE
Office of the General Counsel                                     (IL Bar No. 6285597)
Central Intelligence Agency                                       Attorney, Civil Division
Washington, DC  20505                                            U.S. Department of Justice
                                                                  P.O. Box 883
                                                                  20 Massachusetts Ave., N.W., Room 7302
                                                                  Washington, D.C. 20530
                                                                  Telephone: (202) 616-8209
                                                                  Facsimile: (202) 616-8470

                                                                  *Attorneys for Defendant*

-20-

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March 2008, I caused the foregoing Defendant's (1) Reply in Support of Renewed Motion to Dismiss and Motion for Summary Judgment and (2) Opposition to Plaintiff's Cross-motion for Summary Judgment to be served on plaintiff's counsel of record electronically by means of the Court's CM/ECF system.

*/s/ Michael P. Abate*